FILED
CLERK, U.S. DISTRICT COURT

6/5/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ jb _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>PETROS FICHIDZHYAN,<br>     aka "Peter Fichidzhyan,"<br>JUAN CARLOS ESPARZA,<br>KARPIS SRAPYAN,<br>     aka "Tony Levy,"<br>SUSANNA HARUTYUNYAN, and<br>MIHRAN PANOSYAN,<br>     aka "Mike Hope,"<br><br>          Defendants. | No. CR 2:24-cr-00348-SVW<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Health Care Fraud; 18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 1956(h): Conspiracy to Launder Money; 18 U.S.C. § 1956(a)(1)(B)(i): Money Laundering; 18 U.S.C. § 1957: Monetary Transactions in Crimnally Derived Property over $10,000; 18 U.S.C. § 1035(a)(2): False Statements Related to Health Care Matters; 18 U.S.C. §§ 982(a)(1) and (a)(7), and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

     The Grand Jury charges:

1

COUNT ONE

[18 U.S.C. § 1349]

[Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN]

At times relevant to this Indictment:

A.    INTRODUCTORY ALLEGATIONS

Individuals

1.    Defendant PETROS FICHIDZHYAN, also known as ("aka") "Peter Fichidzhyan," was a resident of Granada Hills, California.

2.    Defendant JUAN CARLOS ESPARZA was a resident of Valley Village, California.

3.    Defendant KARPIS SRAPYAN, aka "Tony Levy," was a resident of Winnetka, Northridge, Woodland Hills and/or Van Nuys, California.

4.    B.L. was a citizen of Russia who was issued a United States visa in or around April 2010, and departed the United States on or about September 29, 2010.

5.    D.G. was a citizen of Russia who was issued a United States visa in or around June 2013, and departed the United States on or about September 18, 2013.

6.    A.M. was a citizen of Russia who was issued a United States visa in or around February 2018, and departed the United States on or about May 30, 2019.

7.    I.S. was a citizen of Ukraine who was issued a United States visa in or around June 2010, and departed the United States on or about September 10, 2010.

8.    Physician 1 was a medical doctor licensed to practice in California.

9.    Physician 2 was a medical doctor licensed to practice

in California who died on or about March 29, 2019.

10.  Physician 3 was a medical doctor licensed to practice in California who died on or about January 21, 2022.

Entities

11.  MJ Home Health Services, Inc. ("MJ Home Health") was a home health care agency located at 6450 Bellingham Avenue, Suite B, North Hollywood, California.  Defendant FICHIDZHYAN owned, controlled, and operated MJ Home Health.  Defendant ESPARZA claimed that defendant ESPARZA was employed by MJ Home Health.

12.  Healthy Life Hospice, Inc. ("Healthy Life") was a purported hospice company that used addresses at 12509 Oxnard Street, Suite 215, North Hollywood, California, and 6422 Bellingham Avenue, No. 201, Los Angeles, California.  Beginning in or around April 2019, B.L. was purportedly the sole owner of Healthy Life, according to records submitted to the State of California and Medicare.

13.  Prayer of Hope Hospice ("Prayer of Hope") was a purported hospice company that used an address at 11336 Camarillo Street, Unit 305, West Toluca Lake, California. Beginning in or around February 2020, D.G. was purportedly the Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and Secretary of Prayer of Hope, and beginning in or around March 2020, A.M. was purportedly the sole owner, and beginning in or around April 2020, A.M. purportedly became the CEO, CFO, and Secretary of Prayer of Hope, according to records submitted to the State of California and Medicare.

14.  Dynamic Hospice Care, Inc. ("Dynamic") was a purported hospice company that used addresses at 10319 Norris Avenue,

Suite C, Pacoima, California, and 5958 Vineland Avenue, Unit D, North Hollywood, California.  Beginning in or around July 2020, I.S. was purportedly the CEO, CFO, and Secretary of Dynamic, according to records submitted to the State of California. Beginning no later than March 2021, I.S. was purportedly the sole owner of Dynamic, according to records submitted to Medicare.

15.  House of Angels Hospice, Inc. ("House of Angels") was a purported hospice company that used an address at 5627 Sepulveda Boulevard, Suite 218, Van Nuys, California.  Beginning in or around April 2021, defendant ESPARZA owned, controlled, and operated House of Angels.

Residences

16.  The Winnetka Residence was a single-family residence located in Winnetka, California.

17.  The Northridge Residence was a single-family residence located in Northridge, California.

The Medicare Program

18.  Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

19.  Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."  Each beneficiary was given a unique health insurance claim number.

20.   Hospices, home health agencies, physicians, and other health care providers who provided services to beneficiaries that were reimbursed by Medicare were referred to as Medicare "providers."

21.   To participate in Medicare, Medicare required prospective providers to be licensed by a state or local agency. After obtaining the applicable license, Medicare required prospective hospice and home health providers to submit an application in which the prospective provider agreed to, among other things, not submit claims for payment to Medicare knowing they were false or fraudulent or with deliberate ignorance or reckless disregard of their truth or falsity.  If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number," which was used for the processing and payment of claims submitted by the provider.

22.   A health care provider with a Medicare provider number could submit claims to Medicare to obtain reimbursement for services rendered to Medicare beneficiaries.

Hospice Services

23.   Medicare coverage for hospice services was limited to situations in which: (1) a physician certified that the beneficiary was terminally ill; and (2) the beneficiary signed an election form statement choosing hospice care instead of other Medicare benefits.  Medicare considered a beneficiary to be "terminally ill" if the beneficiary's life expectancy was six months or less, if the beneficiary's illness ran its normal course.

24.   Hospice services reimbursed by Medicare were

palliative in nature (also referred to as "comfort care") and included, but were not limited to, medications to manage pain symptoms, necessary medical equipment, and bereavement services to surviving family members.

25. Once a beneficiary chose hospice care, Medicare would not cover treatment intended to cure the beneficiary's terminal illness. The beneficiary had to sign and date an election form documenting this choice. The election form had to include an acknowledgement that the beneficiary had been given a full understanding of hospice care, particularly the palliative rather than curative nature of treatment, and an acknowledgement that the beneficiary understood that certain Medicare services were waived by the election. The election form also identified the attending physician for the beneficiary, which is the qualified medical provider deemed to have the most significant role in the determination and delivery of the beneficiary's medical care in hospice.

26. To obtain payment from Medicare for hospice services, the hospice provider must submit a claim for payment. Generally, such claims must set forth, among other things: the beneficiary's name and unique Medicare identification number; the type of services provided to the beneficiary; the date(s) that the services were provided; and the name and National Provider Identifier ("NPI") or Unique Physician Identification Number of the attending physician.

B. <u>OBJECT OF THE CONSPIRACY</u>

27. Beginning no later than in or around February 2019, and continuing through at least in or around January 2023, in

Los Angeles County, within the Central District of California,
and elsewhere, defendants FICHIDZHYAN, ESPARZA, and SRAPYAN
knowingly conspired with each other and others known and unknown
to the Grand Jury to commit health care fraud, in violation of
Title 18, United States Code, Section 1347.

C.   MANNER AND MEANS OF THE CONSPIRACY

     28.   The object of the conspiracy was carried out, and was
to be carried out, in substance as follows:

     The Conspirators Established Control of Health Care
     Entities, Including Through Impersonated Identities

          a.   Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN,
along with others known and unknown to the Grand Jury, would
obtain the names, dates of birth, social security numbers, and
other personal identifying information of foreign persons who at
one time had been present in the United States on U.S. visas,
but had departed the United States (the "Impersonated
Identities"), including, among others, B.L., D.G., A.M., and
I.S.

          b.   Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN,
along with others known and unknown to the Grand Jury, would
attempt to obtain and would obtain means of identification for
the Impersonated Identities.

          c.   Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN,
along with others known and unknown to the Grand Jury, would
establish control over hospice entities, including House of
Angels, Healthy Life, Prayer of Hope, and Dynamic (collectively,
the "Sham Hospices").

          d.   Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN,

7

along with others known and unknown to the Grand Jury, would represent that the Impersonated Identities were the owners and officers of Healthy Life, Prayer of Hope, and Dynamic, including by submitting the Impersonated Identities names and identifying information to the California Secretary of State and Medicare.

e.   Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN, along with others known and unknown to the Grand Jury, would establish bank accounts in the names of the Impersonated Identities and Sham Hospices, claiming the Impersonated Identities as signatories.

f.   Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN, along with others known and unknown to the Grand Jury, would use the Impersonated Identities to sign property leases, including defendant SRAPYAN falsely presenting himself as B.L. to sign office leases on behalf of Dynamic and Healthy Life.

g.   Defendants FICHIDZHYAN, ESPARZA, SRAPYAN, along with others known and unknown to the Grand Jury, would obtain, retain, and use cell phones, cell phone numbers, and cell phone services in the names of the Impersonated Identities.  This includes a phone number ending in 4617 which defendants FICHIDZHYAN, ESPARZA, SRAPYAN, along with others known and unknown to the Grand Jury, would falsely list as I.S.'s cell phone number on the customer profile for a Dynamic bank account, and which defendant FICHIDZHYAN would use to call CMS while posing as I.S. to make inquiries regarding Dynamic, and regarding which defendant FICHIDZHYAN sent text messages to defendant ESPARZA requesting that defendant ESPARZA pay the phone bill for I.S.'s cell phone.

h.   Defendant FICHIDZHYAN, along with others known and unknown to the Grand Jury, would fund the Sham Hospices, including in or around February 2020 defendant FICHIDZHYAN provided initial funds via money orders from MJ Home Health to fund Prayer of Hope's office rent, and in or around 2021 defendant FICHIDZHYAN provided funds via checks from MJ Home Health to House of Angels.

i.   Defendants FICHIDZHYAN, ESPARZA, SRAPYAN, along with others known and unknown to the Grand Jury, would maintain and access documents and information associated with the Impersonated Identities and Sham Hospices at common business and residential addresses, including keeping documents associated with Prayer of Hope, Dynamic, D.G., and A.M. at House of Angels' address, and keeping a House of Angels checkbook at MJ Home Health's address.

j.   Defendants FICHIDZHYAN, ESPARZA, SRAPYAN, along with others known and unknown to the Grand Jury, would also maintain at the Winnetka and Northridge Residences documents, cell phones, and objects associated with Prayer of Hope, Dynamic, Healthy Life, and the Impersonated Identities, including driver's licenses, social security cards, cell phones, password lists, forged initials, and checkbooks.

k.   Defendants FICHIDZHYAN, ESPARZA, SRAPYAN, along with others known and unknown to the Grand Jury, would also access from the Northridge Residence email and bank accounts associated with D.G., B.L., A.M., Prayer of Hope, and other bank accounts that received funds derived from the scheme.

The Conspirators Submitted False Claims to Medicare,
Including Through Fraudulent Use of Physician and Patient
Information

l.    Between no later than in or around July 2019 and
continuing to at least in or around January 2023, defendants
FICHIDZHYAN, ESPARZA, and SRAPYAN, along with others known and
unknown to the Grand Jury, would submit and cause to be
submitted false and fraudulent claims to Medicare on behalf of
the Sham Hospices, seeking payment for purported hospice
services on behalf of, and using the names and personal
identifying information of, Medicare beneficiaries who in fact
were ineligible for hospice services covered by Medicare, not
terminally ill, and had never elected or received hospice care
from the Sham Hospices, including in some instances claiming
that the same beneficiary received services from multiple Sham
Hospices.

m.    Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN,
along with others known and unknown to the Grand Jury, would
misappropriate the names and personal identifying information of
doctors, including doctors listed in MJ Home Health
documentation related to Medicare, Physician 1, and deceased
Physicians 2 and 3, for use in the Sham Hospices' documentation
related to Medicare, including in the submission of false and
fraudulent claims for payment for purported hospices services,
knowing and intending that Medicare would rely on that
information as purportedly reflecting a physician's
determination that hospice services billed were necessary and
appropriate for the beneficiaries in determining whether to

reimburse the provider for the claim.

29.  As a result of defendants FICHIDZHYAN, ESPARZA, and SRAPYAN and their co-conspirators' false and fraudulent claims for hospice services that were neither needed nor rendered, Medicare paid the Sham Hospices more than approximately $15 million, including at least $4.4 million in payments to Healthy Life (between July 2019 and April 2023), $3.7 million in payments to Prayer of Hope (between June 2020 and July 2023), $6.3 million in payments to Dynamic (between November 2020 and July 2023), and $1.3 million in payments to House of Angels (between July 2021 and January 2023).

COUNTS TWO THROUGH FIVE

[18 U.S.C. §§ 1347, 2]

[Defendants FICHIDZHYAN and ESPARZA]

30. The Grand Jury re-alleges paragraphs 1 through 26 and 28 through 29 of this Indictment here.

A.   THE SCHEME TO DEFRAUD

31. Beginning no later than in or around February 2019, and continuing to at least in or around January 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants FICHIDZHYAN and ESPARZA, together with others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly, willfully, and with intent to defraud, executed and willfully caused to be executed a scheme and artifice: (a) to defraud Medicare, a health care benefit program, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare, a health care benefit program, by means of materially false and fraudulent pretenses, representations, and promises and the concealment of material facts, in connection with the delivery of and payment for health care benefits, items, and services.

B.   MANNER AND MEANS OF THE SCHEME TO DEFRAUD

32. The fraudulent scheme operated, in substance, as described in paragraph 28 of this Indictment.

C.   EXECUTIONS OF THE SCHEME TO DEFRAUD

33. On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendants FICHIDZHYAN and ESPARZA, together with

12

others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly and willfully executed and willfully caused to be executed the fraudulent scheme described above by submitting and causing to be submitted to Medicare the following false and fraudulent claims for payment for purported hospice services:

| COUNT | ENTITY/CLAIM NO. | DATE CLAIM SUBMITTED | APPROX. AMOUNT BILLED | BENEFICIARY |
|-------|------------------|----------------------|-----------------------|-------------|
| TWO | Healthy Life/ 21935300030804CAR | 12/19/2019 | $2,000 | M.G. |
| THREE | Prayer of Hope/ 22103600675804CAR | 7/16/2021 | $6,200 | V.T. |
| FOUR | Dynamic/ 22124500649904CAR | 9/2/2021 | $3,750 | L.C. |
| FIVE | House of Angels/ 22223900048504CAR | 8/27/2022 | $3,800 | B.N. |

COUNTS SIX THROUGH TEN

[18 U.S.C. §§ 1028A(a)(1), 2]

[Defendants FICHIDZHYAN, ESPARZA, and SRAPYAN]

34.  The Grand Jury re-alleges paragraphs 1 through 26, 28, 29, and 33 of this Indictment here.

35.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the below defendants, together with others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, a means of identification of another person that the defendant(s) knew belonged to another person, as identified below, during and in relation to a felony violation, specified below:

| COUNT | DEFENDANT(S) | DATE | MEANS OF IDENTIFICATION/FELONY VIOLATION |
|-------|-------------|------|------------------------------------------|
| SIX | FICHIDZHYAN ESPARZA | 12/19/2019 | Used Physician 1's name and NPI during and in relation to a felony violation of Title 18, United States Code, Section 1347, as charged in Count Two of the Indictment |
| SEVEN | FICHIDZHYAN ESPARZA | 4/14/2020 | FICHIDZHYAN transferred to ESPARZA's possession the name and social security number for A.M. during and in relation to a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of the Indictment |

14

| COUNT | DEFENDANT(S) | DATE | MEANS OF IDENTIFICATION/FELONY VIOLATION |
|---|---|---|---|
| EIGHT | SRAPYAN | 6/1/2020 | Used B.L.'s name and date of birth listed on a fake driver's license in signing a property lease for Dynamic during and in relation to a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of the Indictment |
| NINE | SRAPYAN | 6/18/2020 | Possessed on iPhone with IMEI# 359408086013168 a photograph of a fake California's driver's license containing the name and date of birth of B.L. during and in relation to a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of the Indictment |
| TEN | FICHIDZHYAN ESPARZA | 8/2/2021 | Used Physician 2's name and NPI in Medicare claim submission 22121400763504CAR from Dynamic for beneficiary M.D.M. during and in relation to a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of the Indictment |

COUNT ELEVEN

[18 U.S.C. § 1956(h)]

[All Defendants]

At times relevant to this Indictment:

A.   INTRODUCTORY ALLEGATIONS

36.   The Grand Jury re-alleges paragraphs 1 through 26, 28, 29, and 33 of this Indictment here.

37.   Defendant SUSANNA HARUTYUNYAN was a resident of Winnetka, California.  Defendant HARUTUNYAN resided at the Winnetka Residence, and owned and had access to the Northridge Residence.  Defendant HARUTUNYAN claimed that she was employed by MJ Home Health.

38.   Defendant MIHRAN PANOSYAN, aka "Mike Hope," was a resident of Winnetka, California.  Defendant PANOSYAN resided at the Winnetka Residence, and had access to the Northridge Residence.  Defendants PANOSYAN and HARUTYUNYAN were married to each other.  Defendants PANOSYAN and SRAPYAN were cousins.

39.   Winnetka Dental Lab was purportedly a dental supply business that used the Winnetka Residence as its physical address.  Defendant HARUTUNYAN was listed as the owner and proprietor of Winnetka Dental Lab, according to bank and tax records.

40.   The Granada Hills Residence was a single-family residence located in Granada Hills, California.  Defendant HARUTUNYAN owned and relatives of defendant PANOSYAN resided at the Granada Hills Residence.

Bank Accounts

41.   Relevant bank accounts included:

16

a.   An account at Chase Bank ending in x9283 in the name of Prayer of Hope (the "Prayer of Hope Chase Bank x9283 Account"), on which A.M. was the sole listed signatory.

b.   An account at Umpqua Bank ending in x4675 in the name of Prayer of Hope (the "Prayer of Hope Umpqua Bank x4675 Account"), on which A.M. was the sole listed signatory.

c.   An account at US Bank ending in x1703 in the name of Dynamic (the "Dynamic US Bank x1703 Account"), on which I.S. was the sole signatory.  An account at Banc of California ending in x5413 in the name of Dynamic (the "Dynamic Banc of California x5413 Account"), on which I.S. was the sole listed signatory.

d.   An account at Chase Bank ending in x8151 in the name of House of Angels (the "House of Angels Chase Bank x8151 Account"), on which defendant ESPARZA was the sole signatory.

e.   An account at Banc of California ending in x8303 in the name of MJ Home Health (the "MJ Home Health Banc of California x8303 Account"), on which defendant FICHIDZHYAN was the sole signatory.

f.   An account at Banc of California ending in x9506 in the name of A.M. (the "A.M. Banc of California x9506 Account"), on which A.M. was the sole listed signatory.

g.   An account at Wells Fargo Bank ending in x2861 in the name of D.G. (the "D.G. Wells Fargo Bank x2861 Account"), on which D.G. was the sole listed signatory.

h.   An account at Bank of America ending in x2660 in the name of defendant SRAPYAN (the "SRAPYAN Bank of America x2660 Account"), on which defendant SRAPYAN was the sole signatory.

1
2
3
4

       i.    An account at Citibank ending in x4913 in the name of Winnetka Dental Lab (the "Winnetka Dental Lab Citibank x4913 Account"), on which defendant HARUTYUNYAN was the sole signatory.

5
6
7
8

       j.    An account at Bank of America ending in x0230 in the name of defendant HARUTYUNYAN (the "HARUTYUNYAN Bank of America x0230 Account"), on which defendant HARUTYUNYAN was the sole signatory.

9
B.    OBJECTS OF THE CONSPIRACY

10
11
12
13
14
15
16

  42.  Beginning no later than in or around July 2019, and continuing until at least in or around January 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants FICHIDZHYAN, ESPARZA, SRAPYAN, HARUTYUNYAN, and PANOSYAN knowingly conspired with each other and others known and unknown to the Grand Jury to commit the following offenses against the United States:

17
18
19
20
21
22
23
24
25
26

       a.    To knowingly conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, involving the proceeds of specified unlawful activity, namely, health care fraud conspiracy and health care fraud, knowing that the property represented the proceeds of unlawful activity and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

27
28

       b.    To knowingly engage and attempt to engage in monetary transactions, affecting interstate commerce, in

18

criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, health care fraud conspiracy and health care fraud, in violation of Title 18, United States Code, Section 1957.

C.   <u>MANNER AND MEANS OF THE CONSPIRACY</u>

43.   The objects of the conspiracy were carried out, and were to be carried out, in substance as follows:

a.   After defendants FICHIDZHYAN, ESPARZA, and SRAPYAN fraudulently obtained payments from Medicare as described in Counts One through Five into accounts associated with the Sham Hospices, defendants FICHIDZHYAN, ESPARZA, SRAPYAN, HARUTYUNYAN, and PANOSYAN, together with others known and unknown to the Grand Jury, would transfer and cause to be transferred proceeds of the health care fraud scheme between and among numerous assets and bank accounts — including, but not limited to, assets and accounts in the names of the Sham Hospices, MJ Home Health, Winnetka Dental Lab, the Impersonated Identities, and the defendants — to conceal the nature, location, source, ownership, and control of the fraud proceeds.

b.   Defendants FICHIDZHYAN, ESPARZA, SRAPYAN, PANOSYAN, and HARUTYUNYAN, together with others known and unknown to the Grand Jury, would further dissipate, transform, and conceal the nature, location, source, ownership, and control of the fraud proceeds by using financial accounts and credit cards in the names of Impersonated Identities.

c.   Defendants FICHIDZHYAN, ESPARZA, SRAPYAN, HARUTYUNYAN, and PANOSYAN, along with others known and unknown

to the Grand Jury, would also transfer criminally-derived funds, including transferring over $10,000 in individual transactions, from accounts in the names of the Sham Hospices to accounts in their own names or to purchase assets, including vehicles and real estate, in their own names.

COUNTS TWELVE THROUGH FIFTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2]

[Defendants FICHIDZHYAN, SRAPYAN, HARUTYUNYAN, and PANOSYAN]

44.   The Grand Jury re-alleges paragraphs 1 through 26, 28, 29, 33, 36 through 41, and 43 of this Indictment here.

45.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, the defendants below, together with others known and unknown to the Grand Jury, each aiding and abetting one another, knowingly conducted and willfully caused to be conducted the following financial transactions affecting interstate commerce, knowing the property involved represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely, health care fraud conspiracy, in violation of Title 18, United States Code, Section 1349 and health care fraud, in violation of Title 18, United States Code, Section 1347 knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity:

| COUNT | DEFENDANT | DATE | FINANCIAL TRANSACTION |
|-------|-----------|------|----------------------|
| TWELVE | SRAPYAN | 4/20/2021 | Transfer of $16,700 from the Prayer of Hope Umpqua Bank x4675 Account by means of check into the D.G. Wells Fargo Bank x2861 Account |
| THIRTEEN | HARUTYUNYAN | 11/12/2021 | Transfer of $61,200 from the Prayer of Hope Chase Bank x9283 Account by means of check into the Winnetka Dental Lab Citibank x4913 Account |

| COUNT | DEFENDANT | DATE | FINANCIAL TRANSACTION |
|-------|-----------|------|----------------------|
| FOURTEEN | PANOSYAN | 3/2/2022 | Transfer of $46,600 from the Dynamic Banc of California x5413 Account by means of check into the A.M. Banc of California x9506 Account |
| FIFTEEN | FICHIDZHYAN | 3/30/22 | Transfer of $75,500 from the Prayer of Hope Chase Bank x9283 Account by means of check into the MJ Home Health Banc of California x8303 Account |

COUNTS SIXTEEN THROUGH TWENTY-ONE

[18 U.S.C. §§ 1957, 2]

[Defendants FICHIDZHYAN, ESPARZA, SRAPYAN, and HARUTYUNYAN]

46.   The Grand Jury re-alleges paragraphs 1 through 26, 28, 29, 33, 36 through 41, and 43 of this Indictment here.

47.   On or about the below dates, in Los Angeles County, within the Central District of California, and elsewhere, the following defendants, along with others known and unknown to the Grand Jury, each aiding and abetting one another, knowing that the property involved represented the proceeds of some form of unlawful activity, knowingly engaged in, and willfully caused others to knowingly engage in the below monetary transactions affecting interstate commerce in criminally derived property of a value greater than $10,000, which property was, in fact, derived from specified unlawful activity, namely, health care fraud conspiracy, in violation of Title 18, United States Code, Section 1349, and health care fraud, in violation of Title 18, United States Code, Section 1347:

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|---|---|---|---|
| SIXTEEN | HARUTYUNYAN | 10/27/2021 | Electronic transfer of $290,000 from the Dynamic US Bank x1703 Account to a private lender for a mortgage payment on the Granada Hills Residence |
| SEVENTEEN | HARUTYUNYAN | 11/24/2021 | Electronic transfer of $50,000 from the Dynamic US Bank x1703 Account to a private lender for a mortgage payment on the Northridge Residence |

| COUNT | DEFENDANT | DATE | MONETARY TRANSACTION |
|---|---|---|---|
| EIGHTEEN | HARUTYUNYAN | 11/26/2021 | Transfer of $31,200 from the Prayer of Hope Chase Bank x9283 Account by means of check written to "Susanna Harutyunyan" into the HARUTYUNYAN Bank of America x0230 Account |
| NINETEEN | SRAPYAN | 12/3/2021 | Transfer of $20,500 from the Prayer of Hope Chase Bank x9283 Account by means of check written to "Karpis Srapyan" into the SRAPYAN Bank of America x2660 Account |
| TWENTY | ESPARZA | 2/10/2022 | Transfer of $90,000 from the House of Angels Chase Bank x8151 Account by means of check to a car dealership for a vehicle owned by defendant ESPARZA |
| TWENTY-ONE | FICHIDZHYAN | 3/10/2022 | Electronic transfer of $99,900 from the Dynamic Banc of California x5413 Account to a mortgage company for a mortgage payment on a residence owned by defendant FICHIDZHYAN |

COUNTS TWENTY-TWO THROUGH TWENTY-THREE

[18 U.S.C. §§ 1035(a)(2), 2]

[Defendant FICHIZHYAN]

48.   The Grand Jury re-alleges paragraphs 1, 8, 11, and 18-22 of this Indictment here.

49.   Home health care was supportive health care provided to patients in their homes.  Home health care was prescribed by a treating physician to a patient if the patient had developed an illness or injury that required skilled care, but not at the level provided by an acute facility such as a hospital or at a skilled nursing facility.

50.   To qualify for the Medicare home health benefit, among other requirements, a beneficiary must: (1) have been confined to his or her home; (2) have been under the care of a physician; (3) have received services under a CMS Form 485 Home Health Certification and Plan of Care ("485") established and periodically reviewed by a physician; (4) have had a face-to-face encounter with a physician or approved provider within a specified period of time from the start of home health care; and (5) need skilled nursing care on an intermittent basis, physical therapy, speech-language pathology, or have a continuing need for occupational therapy.

51.   On or about the below dates, in Los Angeles County, within the Central District of California, and elsewhere, in a matter involving a health care benefit program, namely, Medicare, and in connection with the delivery of and payment for health care benefits, items, and services, defendant

1   FICHIDZHYAN, along with others known and unknown to the Grand

2   Jury, each aiding and abetting the other, knowingly and

3   willfully made, and willfully caused others to make, the

4   following materially false, fictitious, and fraudulent

5   statements and representations, and made and used, and caused

6   others to make and use, the following materially false writings

7   and documents knowing the same to contain a materially false,

8   fictitious, and fraudulent statement and entry:

| COUNT | DATE | FALSE, FICTIOUS, AND FRAUDULENT STATEMENTS AND REPRESENTATIONS / FALSE WRITINGS AND DOCUMENTS |
|---|---|---|
| TWENTY-TWO | 7/18/2019 | Home Health Certification and Plan of Care, Form CMS 485, falsely stating that Physician 1 recertified A.Y. as confined to his/her home, authorized the plan of care, and that A.Y. remained under Physician 1's care |
| TWENTY-THREE | 11/11/2019 | Home Health Certification and Plan of Care, Form CMS 485, falsely stating that Physician 1 certified A.K. as confined to his/her home, authorized the plan of care, and that A.K. was under Physician 1's care |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982 (a)(7)]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Ten of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction, including but not limited to the following:

(i) $75,447.75 in funds seized from Banc of California account number ending in x8303;

(ii) $2,626,324.73 in funds seized from Bank of California account ending in x9860;

(iii) The real property located at 16817 Rayen Street, Northridge, California, more particularly described as: Lot 1 of tract 17678, as per map recorded in book 598, pages 13 and 14 of Maps, in the Office Of The County Recorder of said County, Assessor's Parcel Number: 2688-027-001;

(iv) The real property located at 17404 San Fernando Mission Boulevard, Granada Hills, California more particularly described as Lot 224 of Tract No.

27

9816, in the City of Los Angeles, County of Los
Angeles, State of California, as per map recorded in
Book 138, Pages 7 to 9 inclusive of maps, in the
Office of the County Recorder of said County.
Excepting therefrom the Southerly 83 Feet Thereof,
Assessor's Parcel Number: 2712-005-012; and

(b) To the extent such property is not available for
forfeiture, a sum of money equal to the total value of the
property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section
853(p), as incorporated by Title 18, United States Code, Section
982(b), any defendant so convicted shall forfeit substitute
property, up to the total value of the property described in the
preceding paragraph if, as the result of any act or omission of
said defendant, the property described in the preceding
paragraph, or any portion thereof: (a) cannot be located upon
the exercise of due diligence; (b) has been transferred, sold to
or deposited with a third party; (c) has been placed beyond the
jurisdiction of the court; (d) has been substantially diminished
in value; or (e) has been commingled with other property that
cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 (a)(1)]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982 (a)(1), in the event of any defendant's conviction of the offenses set forth in any of Counts Eleven through Twenty-One of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)  Any property, real or personal, involved in such offense, and any property traceable to such property, including but not limited to the following:

(i) $75,447.75 in funds seized from Banc of California account number ending in x8303;

(ii) $2,626,324.73 in funds seized from Bank of California account ending in x9860;

(iii) The real property located at 16817 Rayen Street, Northridge, California, more particularly described as: Lot 1 of tract 17678, as per map recorded in book 598, pages 13 and 14 of Maps, in the Office Of The County Recorder of said County, Assessor's Parcel Number: 2688-027-001;

(iv) The real property located at 17404 San Fernando Mission Boulevard, Granada Hills, California more particularly described as Lot 224 of Tract No. 9816, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in

Book 138, Pages 7 to 9 inclusive of maps, in the Office of the County Recorder of said County.

Excepting therefrom the Southerly 83 Feet Thereof, Assessor's Parcel Number: 2712-005-012; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 982 (a)(7) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts Twenty-Two through Twenty-Three of this Indictment.

2.   Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction, including but not limited to the following:

(i) $75,447.75 in funds seized from Banc of California account number ending in x8303;

(ii) $2,626,324.73 in funds seized from Bank of California account ending in x9860;

(iii) The real property located at 16817 Rayen Street, Northridge, California, more particularly described as: Lot 1 of tract 17678, as per map recorded in book 598, pages 13 and 14 of Maps, in the Office Of The County Recorder of said County, Assessor's Parcel Number: 2688-027-001;

(iv) The real property located at 17404 San Fernando Mission Boulevard, Granada Hills, California

more particularly described as Lot 224 of Tract No. 9816, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 138, Pages 7 to 9 inclusive of maps, in the Office of the County Recorder of said County. Excepting therefrom the Southerly 83 Feet Thereof, Assessor's Parcel Number: 2712-005-012; and

(b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

///

///

committing the offense or offenses giving rise to the

forfeiture, conducted three or more separate transactions

involving a total of $100,000 or more in any twelve-month

period.

A TRUE BILL

/s/

Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

ROGER A. HSIEH
Assistant United States Attorney
Deputy Chief, Major Frauds Section

GLENN S. LEON
Chief, Fraud Section
United States Department of Justice

SARAH E. EDWARDS
Trial Attorney, Fraud Section
United States Department of Justice

ERIC SCHMALE
Trial Attorney, Fraud Section
United States Department of Justice