Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1  BILAL A. ESSAYLI
   United States Attorney
2  CHRISTINA T. SHAY
   Assistant United States Attorney
3  Chief, Criminal Division
   SARAH E. EDWARDS
4  ALLISON L. MCGUIRE
   MICHAEL BACHARACH
5  Trial Attorneys
   United States Department of Justice
6  Fraud Section, Criminal Division
   300 N. Los Angeles St., Suite 2001
7  Los Angeles, California 90012
   Telephone:    (202) 931-4782 (EDWARDS)
8                (202) 913-4770 (MCGUIRE)
                 (202) 297-9384 (BACHARACH)
9  E-mail:   sarah.edwards@usdoj.gov
             allison.mcguire@usdoj.gov
10            michael.bacharach@usdoj.gov

11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

12                UNITED STATES DISTRICT COURT

13            FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,          No. CR 2:24-CR-348-SVW-3

15           Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                      KARPIS SRAPYAN
16           v.

17 KARPIS SRAPYAN,
18      aka "Tony Levy,"

19           Defendant.

20

21      1.   This constitutes the plea agreement between KARPIS SRAPYAN,

22 also known as "Tony Levy," ("defendant") the United States Attorney's

23 Office for the Central District of California ("the USAO"), and the

24 Fraud Section of the Criminal Division of the United States

25 Department of Justice (collectively with the USAO, "the United

26 States") in the above-captioned case.  This agreement is limited to

27 the United States and cannot bind any other federal, state, local, or

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1 | foreign prosecuting, enforcement, administrative, or regulatory
2 | authorities.

DEFENDANT'S OBLIGATIONS

4 |    2.   Defendant agrees to:

5 |      a.  At the earliest opportunity requested by the United
6 | States and provided by the Court, appear and plead guilty to counts
7 | one and nineteen of the indictment in United States v. Karpis
8 | Srapyan, CR No. 2:24-348-SVW-3, which charge defendant with
9 | conspiracy to commit health care fraud in violation of 18 U.S.C.
10 | § 1349 and money laundering in violation of 18 U.S.C. § 1957,
11 | respectively.

12 |      b.  Not contest facts agreed to in this agreement.

13 |      c.  Abide by all agreements regarding sentencing contained
14 | in this agreement.

15 |      d.  Appear for all court appearances, surrender as ordered
16 | for service of sentence, obey all conditions of any bond, and obey
17 | any other ongoing court order in this matter.

18 |      e.  Not commit any crime; however, offenses that would be
19 | excluded for sentencing purposes under United States Sentencing
20 | Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
21 | within the scope of this agreement.

22 |      f.  Be truthful at all times with the United States
23 | Probation and Pretrial Services Office and the Court.

24 |      g.  Pay the applicable special assessments at or before
25 | the time of sentencing unless defendant has demonstrated a lack of
26 | ability to pay such assessments.

27 |      h.  Defendant agrees that any and all criminal debt
28 | ordered by the Court will be due in full and immediately.  The

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   government is not precluded from pursuing, in excess of any payment

2   schedule set by the Court, any and all available remedies by which to

3   satisfy defendant's payment of the full financial obligation,

4   including referral to the Treasury Offset Program.

5           i.   Complete the Financial Disclosure Statement on a form

6   provided by the United States and, within 30 days of defendant's

7   entry of guilty pleas, deliver the signed and dated statement, along

8   with all of the documents requested therein, to the United States by

9   either email at usacac.FinLit@usdoj.gov (preferred) or mail to the

10  USAO Financial Litigation Section at 300 North Los Angeles Street,

11  Suite 7516, Los Angeles, CA 90012.  Defendant agrees that defendant's

12  ability to pay criminal debt shall be assessed based on the completed

13  Financial Disclosure Statement and all required supporting documents,

14  as well as other relevant information relating to ability to pay.

15          j.   Authorize the United States to obtain a credit report

16  upon returning a signed copy of this plea agreement.

17          k.   Consent to the United States inspecting and copying

18  all of defendant's financial documents and financial information held

19  by the United States Probation and Pretrial Services Office.

20          l.   Defendant understands and acknowledges that as a

21  result of pleading guilty pursuant to this agreement, defendant will

22  be excluded from Medicare, Medicaid, and all Federal health care

23  programs.  Defendant agrees to complete and execute all necessary

24  documents provided by the United States Department of Health and

25  Human Services, or any other department or agency of the federal

26  government, to effectuate this exclusion within 60 days of receiving

27  the documents.  This exclusion will not affect defendant's right to

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1  apply for and receive benefits as a beneficiary under any Federal

2  health care program, including Medicare and Medicaid.

3      3.    Defendant further agrees:

4          a.    Although defendant denies he has any right, title, or

5  interest to certain of the following enumerated property, to

6  immediately and irrevocably forfeit, on behalf of defendant and any

7  entity in which defendant has held an ownership interest or has

8  served as an officer, director, manager, partner, trustee, or other

9  representative (which entities include, without limitation, MJ Home

10 Health Services, Inc.; Healthy Life Hospice, Inc.; Prayer of Hope

11 Hospice; Dynamic Hospice Care, Inc.; House of Angels Hospice, Inc.;

12 and S.K. Color Printing) to the United States of America all right,

13 title, and interest of defendant in and to any and all monies,

14 properties, and/or assets of any kind, derived from or acquired as a

15 result of the illegal activity to which defendant is pleading guilty,

16 specifically including, but not limited to, the following:

17          i.    $75,447.75 in funds seized from Banc of

18 California account number ending in x8303;

19          ii.   $2,626,324.73 in funds seized from Banc of

20 California account ending in x9860;

21          iii. The real property located at 16817 Rayen Street,

22 Northridge, California, Assessor's Parcel Number 2688-027-001;

23          iv.   $218,571.07 in funds seized from Chase Bank

24 Account ending in x8151; and

25          v.    One 2019 Mercedes-Benz AMG GT63 S, Vehicle

26 Identification Number WDD7X8KB0KA006620 (collectively, with items i-v

27 above, the "Forfeitable Property").

28

4

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

b.   To the Court's entry of an order of forfeiture at or
before sentencing with respect to the Forfeitable Property and to the
forfeiture of the property.

c.   That the Preliminary Order of Forfeiture shall become
final as to the defendant upon entry.

d.   To take whatever steps are necessary to pass to the
United States clear title to the Forfeitable Property, including,
without limitation, the execution of a consent decree of forfeiture
and the completing of any other legal documents required for the
transfer of title to the United States.

e.   Not to contest any administrative forfeiture
proceedings or civil judicial proceedings commenced against the
Forfeitable Property.  If defendant submitted a claim and/or petition
for remission for all or part of the Forfeitable Property on behalf
of himself or any other individual or entity, defendant shall and
hereby does withdraw any such claims or petitions, and further agrees
to waive any right he may have to seek remission or mitigation of the
forfeiture of the Forfeitable Property. Defendant further waives any
and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f.   Not to assist any other individual in any effort
falsely to contest the forfeiture of the Forfeitable Property.

g.   Not to claim that reasonable cause to seize the
Forfeitable Property was lacking.

h.   To prevent the transfer, sale, destruction, or loss of
the Forfeitable Property to the extent defendant has the ability to
do so.

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

i.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Property in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

<u>THE UNITED STATES' OBLIGATIONS</u>

4.   The United States agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the indictment against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   Sentencing Guidelines range, the propriety and extent of any

2   departure from that range, and the sentence to be imposed.

3        d.   At the time of sentencing, provided that defendant

4   demonstrates an acceptance of responsibility for the offenses up to

5   and including the time of sentencing, recommend a two-level reduction

6   in the applicable Sentencing Guidelines offense level, pursuant to

7   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

8   additional one-level reduction if available under that section.

9        e.   Recommend that defendant be sentenced to a term of

10  imprisonment within the applicable Sentencing Guidelines range,

11  provided that the offense level used by the Court to determine that

12  range is 20 or higher and provided that the Court does not depart

13  downward in offense level or criminal history category.  For purposes

14  of this agreement, the Sentencing Guidelines range is that defined by

15  the Sentencing Table in U.S.S.G. Chapter 5, Part A.

16                     NATURE OF THE OFFENSES

17       5.   Defendant understands that for defendant to be guilty of

18  the crime charged in count one, that is conspiracy to commit health

19  care fraud in violation of Title 18, United States Code, Section

20  1349, the following must be true: (a) beginning in or around July

21  2019, and continuing to at least in or around January 2023, there was

22  an agreement between two or more persons to commit the crime of

23  health care fraud, in violation of Title 18, United States Code,

24  Section 1347; and(b) defendant became a member of the conspiracy

25  knowing its object and intending to help accomplish it.  Defendant

26  further understands that the elements of health care fraud, in

27  violation of Title 18, United States Code, Section 1347, are as

28  follows: (a) defendant knowingly and willfully executed a scheme or

                                  7

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    plan to defraud a health care benefit program, or a scheme or plan to

2    obtain money or property owned by or under the custody or control of

3    a health care benefit program by means of material false or

4    fraudulent pretenses, representations, or promises; (b) defendant

5    acted with the intend to defraud, that is, the intent to deceive and

6    cheat; (c) Medicare was a health care benefit program; and (d) the

7    scheme or plan was executed in connection with the delivery of or

8    payment for health care benefits, items or services.

9       Defendant understands that for defendant to be guilty of the

10   crime charged in count nineteen, that is engaging in monetary

11   transactions in property derived from specified unlawful activity, in

12   violation of Title 18, United States Code, Section 1957, the

13   following must be true: (a) defendant knowingly engaged or attempted

14   to engage in a monetary transaction; (b) defendant knew the

15   transaction involved criminally derived property; (c) the property had

16   a value greater than $10,000; (d) the property was in fact derived

17   from health care fraud; and (e) the transaction occurred in the

18   United States.

19                      PENALTIES AND RESTITUTION

20      6.   Defendant understands that the statutory maximum sentence

21   that the Court can impose for a violation of Title 18, United States

22   Code, Section 1349, conspiracy to commit health care fraud in

23   violation of 18 U.S.C. § 1347 is: 10 years' imprisonment; a three-

24   year period of supervised release; a fine of $250,000 or twice the

25   gross gain or gross loss resulting from the offense, whichever is

26   greatest; and a mandatory special assessment of $100.  Defendant

27   further understands that the statutory maximum sentence that the

28   Court can impose for a violation of Title 18, United States Code,

8

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    Section, Section 1957 is: 10 years' imprisonment; a three-year period
2    of supervised release; a fine of not more than twice the amount of
3    criminally derived property involved in the transaction; and a
4    mandatory special assessment of $100.

5        7.    Defendant understands, therefore, that the total maximum
6    sentence for all offenses to which defendant is pleading guilty is:
7    20-years imprisonment; a 3-year period of supervised release; a fine
8    of $250,000 or twice the gross gain or gross loss resulting from the
9    offenses, whichever is greatest; and a mandatory special assessment
10   of $200.

11       8.    Defendant understands that defendant will be required to
12   pay full restitution to the victim(s) of the offenses to which
13   defendant is pleading guilty.  Defendant agrees that, in return for
14   the United States' compliance with its obligations under this
15   agreement, the Court may order restitution to persons other than the
16   victim(s) of the offenses to which defendant is pleading guilty and
17   in amounts greater than those alleged in the count to which defendant
18   is pleading guilty.  In particular, defendant agrees that the Court
19   may order restitution to any victim of any of the following for any
20   losses suffered by that victim as a result: (a) any relevant conduct,
21   as defined in U.S.S.G. § 1B1.3, in connection with the offenses to
22   which defendant is pleading guilty; and (b) any counts dismissed and
23   charges not prosecuted pursuant to this agreement as well as all
24   relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with
25   those counts and charges.  The defendant agrees that the applicable
26   amount of restitution is at least $3,203,574.  The parties recognize
27   and agree that this amount could change based on facts that come to
28   the attention of the parties prior to sentencing.

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

9.    Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that
if defendant violates one or more of the conditions of any supervised
release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

10.    Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that he is pleading guilty to a felony and that
it is a federal crime for a convicted felon to possess a firearm or
ammunition.  Defendant understands that the convictions in this case
may also subject defendant to various other collateral consequences,
including but not limited to revocation of probation, parole, or
supervised release in another case and suspension or revocation of a
professional license.  Defendant understands that unanticipated
collateral consequences will not serve as grounds to withdraw
defendant's guilty pleas.

11.    Defendant and his counsel have discussed the fact that, and
defendant understands that, if defendant is not a United States
citizen, the convictions in this case make it practically inevitable
and a virtual certainty that defendant will be removed or deported
from the United States.  Defendant may also be denied United States
citizenship and admission to the United States in the future.

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   Defendant understands that while there may be arguments that

2   defendant can raise in immigration proceedings to avoid or delay

3   removal, removal is presumptively mandatory and a virtual certainty

4   in this case.  Defendant further understands that removal and

5   immigration consequences are the subject of a separate proceeding and

6   that no one, including his attorney or the Court, can predict to an

7   absolute certainty the effect of his convictions on his immigration

8   status.  Defendant nevertheless affirms that he wants to plead guilty

9   regardless of any immigration consequences that his pleas may entail,

10  even if the consequence is automatic removal from the United States.

11                              FACTUAL BASIS

12       12.  Defendant admits that defendant is, in fact, guilty of the

13  offenses to which defendant is agreeing to plead guilty and that the

14  Forfeitable Property was derived from or acquired as a result of the

15  illegal activity described herein.  Defendant and the United States

16  agree to the statement of facts below and agree that this statement

17  of facts is sufficient to support pleas of guilty to the charges

18  described in this agreement and to establish the Sentencing

19  Guidelines factors set forth in paragraph 14 below but is not meant

20  to be a complete recitation of all facts relevant to the underlying

21  criminal conduct or all facts known to either party that relate to

22  that conduct:

23  INDIVIDUALS

24       Defendant KARPIS SRAPYAN, also known as ("aka") "Tony Levy" was

25  a resident of Winnetka, Northridge, Woodland Hills, and/or Van Nuys,

26  California.

27

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    B.L. was a citizen of Russia who was issued a United States visa

2    on or about April 2010, and departed the United States on or about

3    September 29, 2010.

4    D.G. was a citizen of Russia who was issued a United States visa

5    in or around June 2013, and departed the United States on or about

6    September 18, 2013.

7    A.M. was a citizen of Russia who was issued a United States visa

8    in or around February 2018, and departed the United States on or

9    about May 30, 2019.

10    I.S. was a citizen of Ukraine who was issued a United States

11    visa in or around June 2010, and departed the United States on or

12    about September 10, 2010.

13    Physician 1 was a medical doctor licensed to practice in

14    California.

15    Physician 2 was a medical doctor licensed to practice in

16    California who died on or about March 29, 2019.

17    Physician 3 was a medical doctor licensed to practice in

18    California who died on or about January 21, 2022.

19    ENTITIES

20    MJ Home Health Services, Inc. ("MJ Home Health") was a home

21    health care agency located at 6450 Bellingham Avenue, Suite B, North

22    Hollywood, California. Co-conspirator Petros Fichidzhyan owned,

23    controlled, and operated MJ Home Health.

24    Healthy Life Hospice, Inc. ("Healthy Life") was a purported

25    hospice company that used addresses at 12509 Oxnard Street, Suite

26    215, North Hollywood, California, and 6422 Bellingham Avenue, No.

27    201, Los Angeles, California.  Beginning in or around April 2019,

28    B.L. was purportedly the sole owner of Healthy Life, according to

12

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1  records submitted to the State of California and Medicare.  During
2  the period of B.L.'s purported ownership, Healthy Life existed only
3  as a storefront, had no legitimate patients, no legitimate employees,
4  and provided no hospice services.

5       Prayer of Hope Hospice ("Prayer of Hope") was a purported
6  hospice company that used an address at 11336 Camarillo Street, Unit
7  305, West Toluca Lake, California.  Beginning in or around February
8  2020, D.G. was purportedly the Chief Executive Officer ("CEO"), Chief
9  Financial Officer ("CFO"), and Secretary of Prayer of Hope. Beginning
10 in or around March 2020, A.M. was purportedly the sole owner, and
11 beginning in or around April 2020, A.M. purportedly became the CEO,
12 CFO, and Secretary of Prayer of Hope, according to records submitted
13 to the State of California and Medicare.  During the period of D.G.
14 and A.M.'s purported ownership and control, Prayer of Hope existed
15 only as a storefront, had no legitimate patients, no legitimate
16 employees, and provided no hospice services.

17      Dynamic Hospice Care, Inc. ("Dynamic") was a purported hospice
18 company that used addresses at 10319 Norris Avenue, Suite C, Pacoima,
19 California, and 5958 Vineland Avenue, Unit D, North Hollywood,
20 California.  Beginning in or around July 2020, I.S. was purportedly
21 the CEO, CFO, and Secretary of Dynamic, according to records
22 submitted to the State of California.  Beginning no later than March
23 2021, I.S. was purportedly the sole owner of Dynamic, according to
24 records submitted to Medicare.  During the period of I.S.'s purported
25 ownership and control, Dynamic existed only as a storefront, had no
26 legitimate patients, no legitimate employees, and provided no hospice
27 services.

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    House of Angels Hospice, Inc. ("House of Angels") was a

2  purported hospice company that used an address at 5627 Sepulveda

3  Boulevard, Suite 218, Van Nuys, California.  Beginning in or around

4  April 2021, codefendant Juan Esparza owned, controlled, and operated

5  House of Angels.  During the period of codefendant Esparza's

6  ownership and control, House of Angels existed only as a storefront,

7  had no legitimate patients, no legitimate employees, and provided no

8  hospice services.

9  RESIDENCES

10    The Winnetka Residence was a single-family residence located in

11  Winnetka, California.

12    The Northridge Residence was a single-family residence located

13  in Northridge, California.

14  THE MEDICARE PROGRAM AND HOSPICE SERVICES

15    Medicare was a federal health care benefit program, affecting

16  commerce, that provided benefits to individuals who were 65 years and

17  older or disabled.  Medicare was administered by the Centers for

18  Medicare and Medicaid Services ("CMS"), a federal agency under the

19  United States Department of Health and Human Services.  Medicare was

20  a "health care benefit program" as defined by Title 18, United States

21  Code, Section 24(b).

22    Individuals who qualified for Medicare benefits were referred to

23  as Medicare "beneficiaries."  Each beneficiary was given a unique

24  health insurance claim number.

25    Hospices, home health agencies, physicians, and other health

26  care providers who provided services to beneficiaries that were

27  reimbursed by Medicare were referred to as Medicare "providers."

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    To participate in Medicare, Medicare required prospective

2  providers to be licensed by a state or local agency.  After obtaining

3  the applicable license, Medicare required prospective hospice and

4  home health providers to submit an application in which the

5  prospective provider agreed to, among other things, not submit claims

6  for payment to Medicare knowing they were false or fraudulent or with

7  deliberate ignorance or reckless disregard of their truth or falsity.

8    A health care provider with a Medicare provider number could

9  submit claims to Medicare to obtain reimbursement for services

10 rendered to Medicare beneficiaries.

11 <u>HOSPICE SERVICES</u>

12   Medicare coverage for hospice services was limited to situations

13 in which: (1) a physician certified that the beneficiary was

14 terminally ill; and (2) the beneficiary signed an election form

15 statement choosing hospice care instead of other Medicare benefits.

16 Medicare considered a beneficiary to be "terminally ill" if the

17 beneficiary's life expectancy was six months or less, if the

18 beneficiary's illness ran its normal course.

19   Once a beneficiary chose hospice care, Medicare would not cover

20 treatment intended to cure the beneficiary's terminal illness.  The

21 beneficiary had to sign and date an election form documenting this

22 choice.

23   To obtain payment from Medicare for hospice services, the

24 hospice provider must have submitted a claim for payment.  Generally,

25 such claims must have set forth, among other things: the

26 beneficiary's name and unique Medicare identification number; the

27 type of services provided to the beneficiary; the date(s) that the

28 services were provided; and the name and National Provider Identifier

15

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1  ("NPI") or Unique Physician Identification Number of the attending

2  physician.

3  THE HOSPICE FRAUD SCHEME

4      Beginning no later than in or around February 2019, and

5  continuing through at least in or around January 2023, defendant

6  knowingly agreed with others, including codefendants Fichidzhyan and

7  Esparza, to defraud Medicare.

8      Defendant and his co-conspirators obtained the names, dates of

9  birth, social security numbers, and other personal identifying

10 information of foreign persons who at one time had been present in

11 the United States on U.S. visas, but had departed the United States

12 (the "Impersonated Identities"), including, among others, B.L., D.G.,

13 A.M., and I.S.

14     Defendant and his co-conspirators attempted to obtain and

15 obtained means of identification for the Impersonated Identities.

16     Defendant and his co-conspirators established control over

17 hospice entities, including House of Angels, Healthy Life, Prayer of

18 Hope, and Dynamic (collectively, the "Sham Hospices").

19     Defendant and his co-conspirators represented that the

20 Impersonated Identities were the owners and officers of Healthy Life,

21 Prayer of Hope, and Dynamic, including by submitting the Impersonated

22 Identities' names and identifying information to the California

23 Secretary of State and Medicare.

24     Defendant and his co-conspirators established bank accounts in

25 the names of the Impersonated Identities and Sham Hospices,

26 identifying the Impersonated Identities as signatories on the

27 accounts.

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   Defendant and his co-conspirators used the Impersonated
2   Identities to sign property leases, including defendant falsely
3   presenting himself as B.L. and signing B.L.'s name on office leases
4   for Dynamic and Healthy Life.

5   Defendant and his co-conspirators obtained, retained, and used
6   cell phones, cell phone numbers, and cell phone services in the names
7   of the Impersonated Identities. This included a telephone number
8   ending in 4617 which defendant and his co-conspirators falsely listed
9   as I.S.'s cell phone number on the customer profile of Dynamic's bank
10  account.

11  Defendant and his co-conspirators maintained and accessed
12  documents and information associated with the Impersonated Identities
13  and Sham Hospices at common business and residential addresses,
14  including keeping documents associated with Prayer of Hope, Dynamic,
15  D.G., and A.M. at House of Angels' address, and keeping a House of
16  Angels checkbook at MJ Home Health's address.

17  Defendant and his co-conspirators maintained at the Winnetka and
18  Northridge Residences documents, cell phones, and objects associated
19  with Prayer of Hope, Dynamic, Healthy Life, and the Impersonated
20  Identities, including driver's licenses, social security cards, cell
21  phones, password lists, forged initials, and checkbooks.

22  Defendant and his co-conspirators accessed from the Northridge
23  Residence email and bank accounts associated with D.G., B.L., A.M.,
24  and Prayer of Hope, as well as other bank accounts that received
25  funds derived from the scheme.

26  Between no later than in or around July 2019 and continuing to
27  at least in or around January 2023, defendant and his co-conspirators
28  submitted and caused to be submitted false and fraudulent claims to

17

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   Medicare on behalf of the Sham Hospices, seeking payment for

2   purported hospice services on behalf of, and using the names and

3   personal identifying information of, Medicare beneficiaries who in

4   fact were ineligible for Medicare-covered hospice services because

5   they were not terminally ill, and had never elected to receive, nor

6   received, hospice care from the Sham Hospices.  In some instances,

7   defendant and his co-conspirators claimed that the same beneficiary

8   received hospice services from multiple Sham Hospices.

9        Defendant and his co-conspirators also misappropriated the names

10  and personal identifying information of doctors - including Physician

11  1 and deceased Physicians 2 and 3 -- for use in the Sham Hospices'

12  false claims to Medicare.  This included in the submission of false

13  and fraudulent claims for payment for purported hospices services,

14  knowing and intending that Medicare would rely on that information as

15  purportedly reflecting a physician's determination that the hospice

16  services billed were medically necessary and appropriate for the

17  beneficiaries in determining whether to reimburse the provider for

18  the claim.

19       Specifically, as charged in count one of the Indictment,

20  beginning no later than in or around February 2019, and continuing to

21  at least in or around January 2023, in Los Angeles County, within the

22  Central District of California, and elsewhere, defendant, together

23  with co-defendants Fichidzhyan and Esparza, knowingly and willfully

24  conspired with each other and others known and unknown to execute a

25  scheme or artifice to defraud Medicare.

26       As a result of defendant and his co-conspirators' false and

27  fraudulent claims for hospice services that were neither medically

28  necessary nor rendered, Medicare paid the Sham Hospices approximately

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    $15,992,154.  This includes approximately $4,483,840 in payments to

2    Healthy Life (between July 2019 and April 2023), $3,776,040 in

3    payments to Prayer of Hope (between June 2020 and July 2023),

4    $6,345,776 in payments to Dynamic (between November 2020 and July

5    2023), and $1,386,497 in payments to House of Angels (between July

6    2021 and January 2023).

7    THE MONEY LAUNDERING CONDUCT

8         After defendant and his co-conspirators fraudulently obtained

9    payments from Medicare that were deposited into bank accounts

10   associated with the Sham Hospices as described above, defendant and

11   others, including his codefendants, then transferred and caused to be

12   transferred proceeds of the health care fraud scheme (knowing they

13   were proceeds of unlawful activity) between and among numerous assets

14   and bank accounts — including, but not limited to, assets, accounts,

15   and credit cards in the names of the Sham Hospices and the

16   Impersonated Identities, as well as accounts in the names of shell

17   entities — to conceal the nature, location, source, ownership, and

18   control of the fraud proceeds.  Defendant personally engaged in

19   dozens of transactions, totaling approximately $3.2 million, moving

20   funds between accounts in the name of the Sham Hospices, the

21   Impersonated Identities, and other accounts involved in the money

22   laundering scheme.

23        As part of this money laundering scheme, defendant and his

24   codefendants, each aiding and abetting each other, maintained at the

25   Winnetka and Northridge Residences materials associated with Prayer

26   of Hope, Dynamic, Healthy Life, and the Impersonated Identities.

27   This included, at the Winnetka Residence, a checkbook for D.G.'s

28   Wells Fargo account ending x2861; lists of the Impersonated

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    Identities with their names, dates of birth, and social security

2    numbers; driver's licenses and social security cards in the name of

3    I.S.; a voided check for a Prayer of Hope bank account; and internet

4    bills for Prayer of Hope.  It further included, at the Northridge

5    Residence, in the name of D.G. and other Impersonated Identities,

6    social security cards, mail, business registration statements, auto

7    loan statements, and printed sheets of personal identifying

8    information and passwords; a credit card in the name of D.G.; a debit

9    card and checkbook for D.G.'s Wells Fargo account ending x2861; and

10   cell phones with identifying information related to Healthy Life,

11   Dynamic, B.L., D.G., I.S., and A.M.

12        Defendant together with his codefendants, each aiding and

13   abetting each other, accessed from the Northridge Residence email and

14   bank accounts associated with D.G., B.L., A.M., and Prayer of Hope,

15   as well as other bank accounts that received funds derived from the

16   scheme.

17        On or about December 3, 2021, in Los Angeles County, within the

18   Central District of California, and elsewhere, defendant knowingly

19   conducted and caused to be conducted a financial transaction that

20   defendant knew involved criminally derived property and in fact

21   involved criminally derived property, specifically the proceeds of

22   the health care fraud scheme described above.  Specifically,

23   defendant transferred $20,500 from the Prayer of Hope Chase Bank

24   account ending in x9283 into defendant's personal bank account at

25   Bank of America ending in x2660 by depositing a check written to

26   Karpis SRAPYAN, affecting interstate commerce, as charged in count

27   nineteen of the Indictment.

28        In total, defendant personally laundered at least $3,203,574 of

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   the proceeds from the hospice fraud scheme.

2                           SENTENCING FACTORS

3      13.  Defendant understands that in determining defendant's

4 sentence the Court is required to calculate the applicable Sentencing

5 Guidelines range and to consider that range, possible departures

6 under the Sentencing Guidelines, and the other sentencing factors set

7 forth in 18 U.S.C. § 3553(a).  Defendant understands that the

8 Sentencing Guidelines are advisory only, that defendant cannot have

9 any expectation of receiving a sentence within the calculated

10 Sentencing Guidelines range, and that after considering the

11 Sentencing Guidelines and the other § 3553(a) factors, the Court will

12 be free to exercise its discretion to impose any sentence it finds

13 appropriate up to the maximum set by statute for the crimes of

14 conviction.

15      14.  Defendant and the United States agree to the following

16 applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G.§ 2S1.1(a)(1), U.S.S.G. § 2B1.1(a) |
| Loss of More than $1,500,000 but Less than $3,500,000: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| Federal Health Care Offense with Loss of More than $1,000,000: | +2 | U.S.S.G. § 2B1.1(b)(7) |
| Means of Identification | +2 | U.S.S.G. § 2B1.1(b)(11)(C) |
| Money Laundering Enhancement: | +1 | U.S.S.G. § 2S1.1(b)(2) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 24 | |

26 The United States will agree to a two-level downward adjustment for

27 acceptance of responsibility (and, if applicable, move for an

28 additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1  only if the conditions set forth in paragraph 4(d) are met and if

2  defendant has not committed, and refrains from committing, acts

3  constituting obstruction of justice within the meaning of U.S.S.G.

4  § 3C1.1, as discussed below.  Subject to paragraph 28 below,

5  defendant and the United States agree not to seek, argue, or suggest

6  in any way, either orally or in writing, that any other specific

7  offense characteristics, adjustments, or departures relating to the

8  offense level be imposed, except that the parties agree they may

9  argue for or contest the application of (1) a two-level reduction for

10 zero-point offenders under U.S.S.G. § 4C1.1; (2) a two-level increase

11 for the use of sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C);

12 and (3) a two-level reduction for a minor participant role under

13 U.S.S.G. § 3B1.2(b).  Defendant agrees, however, that if, after

14 signing this agreement but prior to sentencing, defendant were to

15 commit an act, or the United States were to discover a previously

16 undiscovered act committed by defendant prior to signing this

17 agreement, which act, in the judgment of the United States,

18 constituted obstruction of justice within the meaning of U.S.S.G.

19 § 3C1.1, the United States would be free to seek the enhancement set

20 forth in that section and to argue that defendant is not entitled to

21 a downward adjustment for acceptance of responsibility under U.S.S.G.

22 § 3E1.1.

23     15.  Defendant understands that there is no agreement as to

24 defendant's criminal history or criminal history category.

25     16.  Defendant and the United States reserve the right to argue

26 for a sentence outside the sentencing range established by the

27 Sentencing Guidelines based on the factors set forth in 18 U.S.C.

28 § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

17.  Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

     c.   The right to be represented by counsel — and if necessary have the Court appoint counsel — at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the Court appoint counsel — at every other stage of the proceeding.

     d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

     e.   The right to confront and cross-examine witnesses against defendant.

     f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

     g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

     h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

18.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1    appeal defendant's convictions on the offenses to which defendant is

2    pleading guilty.  Defendant understands that this waiver includes,

3    but is not limited to, arguments that the statutes to which defendant

4    is pleading guilty are unconstitutional, and any and all claims that

5    the statement of facts provided herein is insufficient to support

6    defendant's pleas of guilty.

7                LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

8        19.  Defendant agrees that, provided the Court imposes a total

9    term of imprisonment within or below the range corresponding to an

10    offense level of 29 and the criminal history category calculated by

11    the Court, defendant gives up the right to appeal all of the

12    following: (a) the procedures and calculations used to determine and

13    impose any portion of the sentence; (b) the term of imprisonment

14    imposed by the Court; (c) the fine imposed by the Court, provided it

15    is within the statutory maximum; (d) to the extent permitted by law,

16    the constitutionality or legality of defendant's sentence, provided

17    it is within the statutory maximum; (e) the amount and terms of any

18    restitution order, provided it requires payment of no more than

19    $3,203,574; (f) the term of probation or supervised release imposed

20    by the Court, provided it is within the statutory maximum; and

21    (g) any of the following conditions of probation or supervised

22    release imposed by the Court: the conditions set forth in Second

23    Amended General Order 20-04 of this Court; the drug testing

24    conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

25    alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

26        20.  Defendant also gives up any right to bring a post-

27    conviction collateral attack on the convictions or sentence,

28    including any order of restitution, except a post-conviction

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   collateral attack based on a claim of ineffective assistance of

2   counsel, a claim of newly discovered evidence, or an explicitly

3   retroactive change in the applicable Sentencing Guidelines,

4   sentencing statutes, or statutes of conviction. Defendant

5   understands that this waiver includes, but is not limited to,

6   arguments that the statutes to which defendant is pleading guilty is

7   unconstitutional, and any and all claims that the statement of facts

8   provided herein is insufficient to support defendant's pleas of

9   guilty.

10      21.  The United States agrees that, provided (a) all portions of

11   the sentence are at or below the statutory maximum specified above

12   and (b) the Court imposes a term of imprisonment within or above the

13   range corresponding to an offense level of 20 and the criminal

14   history category calculated by the Court, the United States gives up

15   its right to appeal any portion of the sentence, with the exception

16   that the United States reserves the right to appeal the amount of

17   restitution ordered if that amount is less than $3,203,574.

18             RESULT OF WITHDRAWAL OF GUILTY PLEA

19      22.  Defendant agrees that if, after entering guilty pleas

20   pursuant to this agreement, defendant seeks to withdraw and succeeds

21   in withdrawing defendant's guilty pleas on any basis other than a

22   claim and finding that entry into this plea agreement was

23   involuntary, then (a) the United States will be relieved of all of

24   its obligations under this agreement; and (b) should the United

25   States choose to pursue any charge or any civil, administrative, or

26   regulatory action that was either dismissed or not filed as a result

27   of this agreement, then (i) any applicable statute of limitations

28   will be tolled between the date of defendant's signing of this

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1   agreement and the filing commencing any such action; and

2   (ii) defendant waives and gives up all defenses based on the statute

3   of limitations, any claim of pre-indictment delay, or any speedy

4   trial claim with respect to any such action, except to the extent

5   that such defenses existed as of the date of defendant's signing this

6   agreement.

7   RESULT OF VACATUR, REVERSAL, OR SET-ASIDE

8       23.  Defendant agrees that if any count of conviction is

9   vacated, reversed, or set aside, the United States may: (a) ask the

10  Court to resentence the defendant on any remaining counts of

11  conviction, with both the United States and defendant being released

12  from any stipulations regarding sentencing contained in this

13  agreement, (b) ask the Court to voice the entire plea agreement and

14  vacate defendant's guilty pleas on any remaining counts of

15  conviction, with both the United States and defendant being released

16  from all their obligations under this agreement, or (c) leave

17  defendant's remaining convictions, sentence, and plea agreement

18  intact.  Defendant agrees that the choice among these options rests

19  in the exclusive discretion of the United States.

20  EFFECTIVE DATE OF AGREEMENT

21      24.  This agreement is effective upon signature and execution of

22  all required certifications by defendant, defendant's counsel, and a

23  Trial Attorney for the U.S. Department of Justice.

24  BREACH OF AGREEMENT

25      25.  Defendant agrees that if defendant, at any time after the

26  signature of this agreement and execution of all required

27  certifications by defendant, defendant's counsel, and a Trial

28  Attorney, knowingly violates or fails to perform any of defendant's

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1  obligations under this agreement ("a breach"), the United States may

2  declare this agreement breached.  All of defendant's obligations are

3  material, a single breach of this agreement is sufficient for the

4  United States to declare a breach, and defendant shall not be deemed

5  to have cured a breach without the express agreement of the United

6  States in writing.  If the United States declares this agreement

7  breached, and the Court finds such a breach to have occurred, then:

8  (a) if defendant has previously entered a guilty plea pursuant to

9  this agreement, defendant will not be able to withdraw the guilty

10 pleas, and (b) the United States will be relieved of all its

11 obligations under this agreement.

12      26.  Following the Court's finding of a knowing breach of this

13 agreement by defendant, should the United States choose to pursue any

14 charge or any civil, administrative, or regulatory action that was

15 either dismissed or not filed as a result of this agreement, then:

16           a.   Defendant agrees that any applicable statute of

17 limitations is tolled between the date of defendant's signing of this

18 agreement and the filing commencing any such action.

19           b.   Defendant waives and gives up all defenses based on

20 the statute of limitations, any claim of pre-indictment delay, or any

21 speedy trial claim with respect to any such action, except to the

22 extent that such defenses existed as of the date of defendant's

23 signing this agreement.

24           c.   Defendant agrees that: (i) any statements made by

25 defendant, under oath, at the guilty plea hearing (if such a hearing

26 occurred prior to the breach); (ii) the agreed to factual basis

27 statement in this agreement; and (iii) any evidence derived from such

28 statements, shall be admissible against defendant in any such action

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1 against defendant, and defendant waives and gives up any claim under

2 the United States Constitution, any statute, Rule 410 of the Federal

3 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

4 Procedure, or any other federal rule, that the statements or any

5 evidence derived from the statements should be suppressed or are

6 inadmissible.

7 COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

8 OFFICE NOT PARTIES

9     27. Defendant understands that the Court and the United States

10 Probation and Pretrial Services Office are not parties to this

11 agreement and need not accept any of the United States' sentencing

12 recommendations or the parties' agreements to facts or sentencing

13 factors.

14     28. Defendant understands that both defendant and the United

15 States are free to: (a) supplement the facts by supplying relevant

16 information to the United States Probation and Pretrial Services

17 Office and the Court, (b) correct any and all factual misstatements

18 relating to the Court's Sentencing Guidelines calculations and

19 determination of sentence, and (c) argue on appeal and collateral

20 review that the Court's Sentencing Guidelines calculations and the

21 sentence it chooses to impose are not error, although each party

22 agrees to maintain its view that the calculations in paragraph 14 are

23 consistent with the facts of this case. While this paragraph permits

24 both the United States and defendant to submit full and complete

25 factual information to the United States Probation and Pretrial

26 Services Office and the Court, even if that factual information may

27 be viewed as inconsistent with the facts agreed to in this agreement,

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1  this paragraph does not affect defendant's and the United States'

2  obligations not to contest the facts agreed to in this agreement.

3      29.  Defendant understands that even if the Court ignores any

4  sentencing recommendation, finds facts or reaches conclusions

5  different from those agreed to, and/or imposes any sentence up to the

6  maximum established by statute, defendant cannot, for that reason,

7  withdraw defendant's guilty plea, and defendant will remain bound to

8  fulfill all defendant's obligations under this agreement.  Defendant

9  understands that no one — not the prosecutor, defendant's attorney,

10 or the Court — can make a binding prediction or promise regarding the

11 sentence defendant will receive, except that it will be between the

12 statutorily mandated sentence and the statutory maximum.

13                    NO ADDITIONAL AGREEMENTS

14     30.  Defendant understands that, except as set forth herein,

15 there are no promises, understandings, or agreements between the

16 United States and defendant or defendant's attorney, and that no

17 additional promise, understanding, or agreement may be entered into

18 unless in a writing signed by all parties or on the record in court.

19 //

20 //

21

22

23

24

25

26

27

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

1                    <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        31.  The parties agree that this agreement will be considered

3 part of the record of defendant's guilty plea hearing as if the

4 entire agreement had been read into the record of the proceeding.

5 AGREED AND ACCEPTED

6 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF

7 CALIFORNIA

8 BILAL A. ESSAYLI
   United States Attorney

9

10                                   7/1/2025

11 MICHAEL BACHARACH                    Date
    SARAH E. EDWARDS

12 ALLISON L. MCGUIRE
    Trial Attorneys

13                               6/30/2025

14 KARPIS SRAPYAN                      Date
    Defendant

15                                6/30/25

16 DAVID YERKANYAN                  Date
    Attorney for Defendant

17

18

19

20

21

22

23

24

25

26

27

28

Docusign Envelope ID: 95267E73-EB35-431D-BB9F-2E0C8813747B

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

Signed by:
_____                    6/30/2025
KARPIS SRAPYAN                                  Date
Defendant

//

31

1

<u>CERTIFICATION OF INTERPRETER</u>

2        I, _____, am fluent in the written and spoken

3 English and Armenian languages.  I accurately translated this entire

4 agreement from English into Armenian to defendant SRAPYAN on this

5 date.

6

7 _____          _____
  INTERPRETER                            Date

8

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

9        I am KARPIS SRAPYAN's attorney.  I have carefully and thoroughly

10 discussed every part of this agreement with my client.  Further, I

11 have fully advised my client of his rights, of possible pretrial

12 motions that might be filed, of possible defenses that might be

13 asserted either prior to or at trial, of the sentencing factors set

14 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

15 provisions, and of the consequences of entering into this agreement.

16 To my knowledge: no promises, inducements, or representations of any

17 kind have been made to my client other than those contained in this

18 agreement; no one has threatened or forced my client in any way to

19 enter into this agreement; my client's decision to enter into this

20 agreement is an informed and voluntary one; and the factual basis set

21 forth in this agreement is sufficient to support my client's entry of

22 guilty pleas pursuant to this agreement.

23

24 _____          6/30/25
                                         _____
25 DAVID YERKANYAN                        Date
  Attorney for Defendant KARPIS    .
26 SRAPYAN

27

28

                              32