BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
SARAH E. EDWARDS
ALLISON L. MCGUIRE
MICHAEL BACHARACH
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
300 N. Los Angeles St., Suite 2001
Los Angeles, California 90012
Telephone:     (202) 931-4782 (EDWARDS)
               (202) 913-4770(MCGUIRE)
               (202) 297-9384 (BACHARACH)
E-mail:   sarah.edwards@usdoj.gov
          allison.mcguire@usdoj.gov
          michael.bacharach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

　　　　　Plaintiff,

　　　　　v.

JUAN CARLOS ESPARZA

　　　　　Defendant.

No. CR 2:24-CR-348-SVW-2

PLEA AGREEMENT FOR DEFENDANT
JUAN CARLOS ESPARZA

    1.    This constitutes the plea agreement between JUAN CARLOS
ESPARZA ("defendant") the United States Attorney's Office for the
Central District of California ("the USAO"), and the Fraud Section of
the Criminal Division of the United States Department of Justice
(collectively with the USAO, "the United States") in the above-
captioned case.  This agreement is limited to the United States and
cannot bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to counts two and twenty of the indictment in United States v. Juan Carlos Esparza, CR No. 2:24-348-SVW-2, which charge defendant with health care fraud in violation of 18 U.S.C. § 1347 and money laundering in violation of 18 U.S.C. § 1957, respectively.

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.    Defendant agrees that any and all criminal debt ordered by the Court will be due in full and immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to

satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

       i.   Complete the Financial Disclosure Statement on a form provided by the United States and, within 30 days of defendant's entry of guilty pleas, deliver the signed and dated statement, along with all of the documents requested therein, to the United States by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

       j.   Authorize the United States to obtain a credit report upon returning a signed copy of this plea agreement.

       k.   Consent to the United States inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

       l.   Defendant understands and acknowledges that as a result of pleading guilty pursuant to this agreement, defendant will be excluded from Medicare, Medicaid, and all Federal health care programs. Defendant agrees to complete and execute all necessary documents provided by the United States Department of Health and Human Services, or any other department or agency of the federal government, to effectuate this exclusion within 60 days of receiving the documents. This exclusion will not affect defendant's right to apply for and receive benefits as a beneficiary under any Federal health care program, including Medicare and Medicaid.

       3.   Defendant further agrees:

1          a.    Although defendant denies he has any right, title, or

2  interest to certain of the following enumerated property, to

3  immediately and irrevocably forfeit, on behalf of defendant and any

4  entity in which defendant has held an ownership interest or has

5  served as an officer, director, manager, partner, trustee, or other

6  representative (which entities include, without limitation, MJ Home

7  Health Services, Inc.; Healthy Life Hospice, Inc.; Prayer of Hope

8  Hospice; Dynamic Hospice Care, Inc.; and House of Angels Hospice,

9  Inc.) to the United States of America all right, title, and interest

10  of defendant in and to any and all monies, properties, and/or assets

11  of any kind, derived from or acquired as a result of the illegal

12  activity to which defendant is pleading guilty, specifically

13  including, but not limited to, the following:

14          i.    $75,447.75 in funds seized from Banc of

15  California account number ending in x8303;

16          ii.   $2,626,324.73 in funds seized from Banc of

17  California account ending in x9860;

18          iii. The real property located at 16817 Rayen Street,

19  Northridge, California, Assessor's Parcel Number 2688-027-001;

20          iv.   $218,571.07 in funds seized from Chase Bank

21  Account ending in x8151; and

22          v.    One 2019 Mercedes-Benz AMG GT63 S, Vehicle

23  Identification Number WDD7X8KB0KA006620 (collectively, with items i-v

24  above, the "Forfeitable Property").

25          b.    To the Court's entry of an order of forfeiture at or

26  before sentencing with respect to the Forfeitable Property and to the

27  forfeiture of the property.

28

c.   That the Preliminary Order of Forfeiture shall become final as to the defendant upon entry.

d.   To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Property, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

e.   Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Property.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Property on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Property. Defendant further waives any and all notice requirements of 18 U.S.C. § 983(a)(1)(A).

f.   Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Property.

g.   Not to claim that reasonable cause to seize the Forfeitable Property was lacking.

h.   To prevent the transfer, sale, destruction, or loss of the Forfeitable Property to the extent defendant has the ability to do so.

i.   That forfeiture of Forfeitable Property shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

j.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements

of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding
notice of the forfeiture in the charging instrument, announcements of
the forfeiture sentencing, and incorporation of the forfeiture in the
judgment; (2) all constitutional and statutory challenges to the
forfeiture (including by direct appeal, habeas corpus or any other
means); and (3) all constitutional, legal, and equitable defenses to
the forfeiture of the Forfeitable Property in any proceeding on any
grounds including, without limitation, that the forfeiture
constitutes an excessive fine or punishment.  Defendant acknowledges
that forfeiture of the Forfeitable Property is part of the sentence
that may be imposed in this case and waives any failure by the Court
to advise defendant of this, pursuant to Federal Rule of Criminal
Procedure 11(b)(1)(J), at the time the Court accepts defendant's
guilty pleas.

<div align="center">THE UNITED STATES' OBLIGATIONS</div>

4.    The United States agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained
in this agreement.

c.    At the time of sentencing, move to dismiss the
remaining counts of the indictment against defendant.  Defendant
agrees, however, that at the time of sentencing the Court may
consider any dismissed charges in determining the applicable
Sentencing Guidelines range, the propriety and extent of any
departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offenses up to
and including the time of sentencing, recommend a two-level reduction

in the applicable Sentencing Guidelines offense level, pursuant to
U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
additional one-level reduction if available under that section.

     e.   Recommend that defendant be sentenced to a term of
imprisonment within the applicable Sentencing Guidelines range,
provided that the offense level used by the Court to determine that
range is 20 or higher and provided that the Court does not depart
downward in offense level or criminal history category.  For purposes
of this agreement, the Sentencing Guidelines range is that defined by
the Sentencing Table in U.S.S.G. Chapter 5, Part A.

<u>NATURE OF THE OFFENSES</u>

    5.   Defendant understands that for defendant to be guilty of
the crime charged in count two, that is, health care fraud, in
violation of Title 18, United States Code, Section 1347, the
following must be true: (a) defendant knowingly and willfully
executed a scheme or plan to defraud a health care benefit program,
or a scheme or plan to obtain money or property owned by or under the
custody or control of a health care benefit program by means of
material false or fraudulent pretenses, representations, or promises;
(b) defendant acted with the intent to defraud, that is, the intent
to deceive and cheat; (c) Medicare was a health care benefit program;
and (d) the scheme or plan was executed in connection with the
delivery of or payment for health care benefits, items, or services.

    Defendant understands that for defendant to be guilty of the
crime charged in count twenty, that is engaging in monetary
transactions in property derived from specified unlawful activity, in
violation of Title 18, United States Code, Section 1957, the
following must be true: (a) defendant knowingly engaged or attempted

to engage in a monetary transaction; (b) defendant knew the transaction involved criminally derived property; (c) the property had a value greater than $10,000; (d) the property was in fact derived from health care fraud; and (e) the transaction occurred in the United States.

### PENALTIES AND RESTITUTION

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1347 is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.  Defendant further understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section, Section 1957 is: 10 years' imprisonment; a three-year period of supervised release; a fine of not more than twice the amount of criminally derived property involved in the transaction; and a mandatory special assessment of $100.

7.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 20-years imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

8.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for the United States' compliance with its obligations under this

agreement, the Court may order restitution to persons other than the
victim(s) of the offenses to which defendant is pleading guilty and
in amounts greater than those alleged in the count to which defendant
is pleading guilty.  In particular, defendant agrees that the Court
may order restitution to any victim of any of the following for any
losses suffered by that victim as a result: (a) any relevant conduct,
as defined in U.S.S.G. § 1B1.3, in connection with the offenses to
which defendant is pleading guilty; and (b) any counts dismissed and
charges not prosecuted pursuant to this agreement as well as all
relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with
those counts and charges.  The defendant agrees that the applicable
amount of restitution is at least $1,825,012.  The parties recognize
and agree that this amount could change based on facts that come to
the attention of the parties prior to sentencing.

9.    Defendant understands that supervised release is a period
of time following imprisonment during which defendant will be subject
to various restrictions and requirements.  Defendant understands that
if defendant violates one or more of the conditions of any supervised
release imposed, defendant may be returned to prison for all or part
of the term of supervised release authorized by statute for the
offense that resulted in the term of supervised release, which could
result in defendant serving a total term of imprisonment greater than
the statutory maximum stated above.

10.    Defendant understands that, by pleading guilty, defendant
may be giving up valuable government benefits and valuable civic
rights, such as the right to vote, the right to possess a firearm,
the right to hold office, and the right to serve on a jury.
Defendant understands that he is pleading guilty to a felony and that

it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

11.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

12.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty and that the Forfeitable Property was derived from or acquired as a result of the

10

illegal activity described herein.  Defendant and the United States agree to the statement of facts below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 14 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct:

INDIVIDUALS

Defendant JUAN CARLOS ESPARZA was a resident of Valley Village, California.

B.L. was a citizen of Russia who was issued a United States visa on or about April 2010, and departed the United States on or about September 29, 2010.

D.G. was a citizen of Russia who was issued a United States visa in or around June 2013, and departed the United States on or about September 18, 2013.

A.M. was a citizen of Russia who was issued a United States visa in or around February 2018, and departed the United States on or about May 30, 2019.

I.S. was a citizen of Ukraine who was issued a United States visa in or around June 2010, and departed the United States on or about September 10, 2010.

Physician 1 was a medical doctor licensed to practice in California.

Physician 2 was a medical doctor licensed to practice in California who died on or about March 29, 2019.

Physician 3 was a medical doctor licensed to practice in California who died on or about January 21, 2022.

ENTITIES

MJ Home Health Services, Inc. ("MJ Home Health") was a home health care agency located at 6450 Bellingham Avenue, Suite B, North Hollywood, California.  Codefendant Petros Fichidzhyan owned, controlled, and operated MJ Home Health.

Healthy Life Hospice, Inc. ("Healthy Life") was a purported hospice company that used addresses at 12509 Oxnard Street, Suite 215, North Hollywood, California, and 6422 Bellingham Avenue, No. 201, Los Angeles, California.  Beginning in or around April 2019, B.L. was purportedly the sole owner of Healthy Life, according to records submitted to the State of California and Medicare.  During the period of B.L.'s purported ownership, Healthy Life existed only as a storefront, had no legitimate patients, no legitimate employees, and provided no hospice services.

Prayer of Hope Hospice ("Prayer of Hope") was a purported hospice company that used an address at 11336 Camarillo Street, Unit 305, West Toluca Lake, California.  Beginning in or around February 2020, D.G. was purportedly the Chief Executive Officer ("CEO"), Chief Financial Officer ("CFO"), and Secretary of Prayer of Hope. Beginning in or around March 2020, A.M. was purportedly the sole owner, and beginning in or around April 2020, A.M. purportedly became the CEO, CFO, and Secretary of Prayer of Hope, according to records submitted to the State of California and Medicare.  During the period of D.G. and A.M.'s purported ownership and control, Prayer of Hope existed only as a storefront, had no legitimate patients, no legitimate employees, and provided no hospice services.

Dynamic Hospice Care, Inc. ("Dynamic") was a purported hospice company that used addresses at 10319 Norris Avenue, Suite C, Pacoima, California, and 5958 Vineland Avenue, Unit D, North Hollywood, California.  Beginning in or around July 2020, I.S. was purportedly the CEO, CFO, and Secretary of Dynamic, according to records submitted to the State of California.  Beginning no later than March 2021, I.S. was purportedly the sole owner of Dynamic, according to records submitted to Medicare.  During the period of I.S.'s purported ownership and control, Dynamic existed only as a storefront, had no legitimate patients, no legitimate employees, and provided no hospice services.

House of Angels Hospice, Inc. ("House of Angels") was a purported hospice company that used an address at 5627 Sepulveda Boulevard, Suite 218, Van Nuys, California.  Beginning in or around April 2021, codefendant Juan Esparza owned, controlled, and operated House of Angels.  During the period of codefendant Esparza's ownership and control, House of Angels existed only as a storefront, had no legitimate patients, no legitimate employees, and provided no hospice services.

RESIDENCES

The Winnetka Residence was a single-family residence located in Winnetka, California.

The Northridge Residence was a single-family residence located in Northridge, California.

THE MEDICARE PROGRAM AND HOSPICE SERVICES

Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for

Medicare and Medicaid Services ("CMS"), a federal agency under the
United States Department of Health and Human Services.  Medicare was
a "health care benefit program" as defined by Title 18, United States
Code, Section 24(b).

Individuals who qualified for Medicare benefits were referred to
as Medicare "beneficiaries."  Each beneficiary was given a unique
health insurance claim number.

Hospices, home health agencies, physicians, and other health
care providers who provided services to beneficiaries that were
reimbursed by Medicare were referred to as Medicare "providers."

To participate in Medicare, Medicare required prospective
providers to be licensed by a state or local agency.  After obtaining
the applicable license, Medicare required prospective hospice and
home health providers to submit an application in which the
prospective provider agreed to, among other things, not submit claims
for payment to Medicare knowing they were false or fraudulent or with
deliberate ignorance or reckless disregard of their truth or falsity.

A health care provider with a Medicare provider number could
submit claims to Medicare to obtain reimbursement for services
rendered to Medicare beneficiaries.

HOSPICE SERVICES

Medicare coverage for hospice services was limited to situations
in which: (1) a physician certified that the beneficiary was
terminally ill; and (2) the beneficiary signed an election form
statement choosing hospice care instead of other Medicare benefits.
Medicare considered a beneficiary to be "terminally ill" if the
beneficiary's life expectancy was six months or less, if the
beneficiary's illness ran its normal course.

14

Once a beneficiary chose hospice care, Medicare would not cover treatment intended to cure the beneficiary's terminal illness.  The beneficiary had to sign and date an election form documenting this choice.

To obtain payment from Medicare for hospice services, the hospice provider must have submitted a claim for payment.  Generally, such claims must have set forth, among other things: the beneficiary's name and unique Medicare identification number; the type of services provided to the beneficiary; the date(s) that the services were provided; and the name and National Provider Identifier ("NPI") or Unique Physician Identification Number of the attending physician.

THE HOSPICE FRAUD SCHEME

Beginning no later than in or around February 2019, and continuing through at least in or around January 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly engaged in a scheme with others, including codefendants Fichidzhyan and Srapyan, to defraud Medicare.

Defendant and his coschemers obtained the names, dates of birth, social security numbers, and other personal identifying information of foreign persons who at one time had been present in the United States on U.S. visas, but had departed the United States (the "Impersonated Identities"), including, among others, B.L., D.G., A.M., and I.S.

Defendant and his coschemers attempted to obtain and obtained means of identification for the Impersonated Identities.

Defendant and his coschemers established control over hospice entities, including House of Angels, Healthy Life, Prayer of Hope, and Dynamic (collectively, the "Sham Hospices").

Defendant and his coschemers represented that the Impersonated Identities were the owners and officers of Healthy Life, Prayer of Hope, and Dynamic, including by submitting the Impersonated Identities' names and identifying information to the California Secretary of State and Medicare.

Defendant and his coschemers established bank accounts in the names of the Impersonated Identities and Sham Hospices, identifying the Impersonated Identities as signatories on the accounts.

Defendant and his coschemers used the Impersonated Identities to sign property leases, including codefendant Srapyan falsely presenting himself as B.L. and signing B.L.'s name on office leases for Dynamic and Healthy Life.

Defendant and his coschemers obtained, retained, and used cell phones, cell phone numbers, and cell phone services in the names of the Impersonated Identities.  This included a telephone number ending in 4617 which defendant and his coschemers falsely listed as I.S.'s cell phone number on the customer profile of Dynamic's bank account. Defendant and his codefendant Fichidzhyan discussed payment of the phone bill for I.S.'s phone via text message, and defendant paid the phone bill for I.S.'s phone.

Defendant and his coschemers maintained and accessed documents and information associated with the Impersonated Identities and Sham Hospices at common business and residential addresses, including keeping documents associated with Prayer of Hope, Dynamic, D.G., and

A.M. at House of Angels' address, and keeping a House of Angels checkbook at MJ Home Health's address.

Defendant and his coschemers maintained at the Winnetka and Northridge Residences documents, cell phones, and objects associated with Prayer of Hope, Dynamic, Healthy Life, and the Impersonated Identities, including driver's licenses, social security cards, cell phones, password lists, forged initials, and checkbooks.

Defendant and his coschemers accessed from the Northridge Residence email and bank accounts associated with D.G., B.L., A.M., and Prayer of Hope, as well as other bank accounts that received funds derived from the scheme.

Between no later than in or around July 2019 and continuing to at least in or around January 2023, defendant and his coschemers submitted and caused to be submitted false and fraudulent claims to Medicare on behalf of the Sham Hospices, seeking payment for purported hospice services on behalf of, and using the names and personal identifying information of, Medicare beneficiaries who in fact were ineligible for Medicare-covered hospice services because they were not terminally ill, and had never elected to receive, nor received, hospice care from the Sham Hospices.  In some instances, defendant and his coschemers claimed that the same beneficiary received hospice services from multiple Sham Hospices.

Defendant and his coschemers also misappropriated the names and personal identifying information of doctors – including Physician 1 and deceased Physicians 2 and 3 -- for use in the Sham Hospices' false claims to Medicare.  This included in the submission of false and fraudulent claims for payment for purported hospices services, knowing and intending that Medicare would rely on that information as

purportedly reflecting a physician's determination that the hospice services billed were medically necessary and appropriate for the beneficiaries in determining whether to reimburse the provider for the claim.

Beginning no later than in or around February 2019, and continuing to at least in or around January 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendant, together with others, each aiding and abetting one another, knowingly, willfully, and with intent to defraud, executed and willfully caused to be executed a scheme and artifice: (a) to defraud Medicare, a health care benefit program, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare, a health care benefit program, by means of materially false and fraudulent pretenses, representations, and promises and the concealment of material facts, in connection with the delivery of and payment for health care benefits, items, and services.

Specifically, as charged in count two of the Indictment, on or about December 19, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant, together with others, each aiding and abetting one another, knowingly and willfully executed and willfully caused to be executed the fraudulent scheme described above by submitting and causing to be submitted to Medicare a false and fraudulent claim for payment in the amount of $2,000 for hospice services purportedly provided by Healthy Life to beneficiary M.G.

In total, as a result of defendant and his coschemers' false and fraudulent claims for hospice services that were neither medically

necessary nor rendered, Medicare paid the Sham Hospices approximately
$15,992,154.  This includes approximately $4,483,840 in payments to
Healthy Life (between July 2019 and April 2023), $3,776,040 in
payments to Prayer of Hope (between June 2020 and July 2023),
$6,345,776 in payments to Dynamic (between November 2020 and July
2023), and $1,386,497 in payments to House of Angels (between July
2021 and January 2023).

In total, defendant personally received or controlled at least
$1,825,012 of the proceeds from the hospice fraud scheme.

THE MONEY LAUNDERING CONDUCT

After defendant and his coschemers fraudulently obtained
payments from Medicare that were deposited into bank accounts
associated with the Sham Hospices as described above, defendant and
others, including his codefendants, then transferred and caused to be
transferred proceeds of the health care fraud scheme (knowing they
were proceeds of unlawful activity) between and among numerous assets
and bank accounts — including, but not limited to, assets, accounts,
and credit cards in the names of the Sham Hospices and the
Impersonated Identities, as well as accounts in the names of shell
entities — to conceal the nature, location, source, ownership, and
control of the fraud proceeds.

As part of this money laundering scheme, defendant and his
codefendants, each aiding and abetting each other, maintained at the
Winnetka and Northridge Residences materials associated with Prayer
of Hope, Dynamic, Healthy Life, and the Impersonated Identities.
This included, at the Winnetka Residence, a checkbook for D.G.'s
Wells Fargo account ending x2861; lists of the Impersonated
Identities with their names, dates of birth, and social security

19

1  numbers; driver's licenses and social security cards in the name of
2  I.S.; a voided check for a Prayer of Hope bank account; and internet
3  bills for Prayer of Hope.  It further included, at the Northridge
4  Residence, in the name of D.G. and other Impersonated Identities,
5  social security cards, mail, business registration statements, auto
6  loan statements, and printed sheets of personal identifying
7  information and passwords; a credit card in the name of D.G.; a debit
8  card and checkbook for D.G.'s Wells Fargo account ending x2861; and
9  cell phones with identifying information related to Healthy Life,
10 Dynamic, B.L., D.G., I.S., and A.M.

11      Defendant together with his codefendants, each aiding and
12 abetting each other, accessed from the Northridge Residence email and
13 bank accounts associated with D.G., B.L., A.M., and Prayer of Hope,
14 as well as other bank accounts that received funds derived from the
15 scheme.

16      On or about February 10, 2022, in Los Angeles County, within the
17 Central District of California, and elsewhere, defendant knowingly
18 conducted and caused to be conducted a financial transaction that
19 defendant knew involved criminally derived property and in fact
20 involved criminally derived property, specifically the proceeds of
21 the health care fraud scheme described above.  Specifically,
22 defendant transferred $90,000 from the House of Angels Chase Bank
23 account ending in x8151 by means of a check to a car dealership to
24 purchase a vehicle owned by defendant, affecting interstate commerce,
25 as charged in count twenty of the Indictment.

26                          SENTENCING FACTORS

27      13.  Defendant understands that in determining defendant's
28 sentence the Court is required to calculate the applicable Sentencing

Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

14.  Defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G.§ 2S1.1(a)(1), U.S.S.G. § 2B1.1(a) |
| Loss of More than $1,500,000 but Less than $3,500,000: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| Federal Health Care Offense with Loss of More than $1,000,000: | +2 | U.S.S.G. § 2B1.1(b)(7) |
| Means of Identification | +2 | U.S.S.G. § 2B1.1(b)(11)(C) |
| Money Laundering Enhancement: | +1 | U.S.S.G. § 2S1.1(b)(2) |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1 |
| Total Offense Level: | 24 | |

The United States will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 4(d) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 28 below,

defendant and the United States agree not to seek, argue, or suggest
in any way, either orally or in writing, that any other specific
offense characteristics, adjustments, or departures relating to the
offense level be imposed, except that the parties agree they may
argue for or contest the application of (1) a two-level reduction for
zero-point offenders under U.S.S.G. § 4C1.1; (2) a two-level increase
for the use of sophisticated means under U.S.S.G. § 2B1.1(b)(10)(C);
and (3) a two-level reduction for a minor participant role under
U.S.S.G. § 3B1.2(b).  Defendant agrees, however, that if, after
signing this agreement but prior to sentencing, defendant were to
commit an act, or the United States were to discover a previously
undiscovered act committed by defendant prior to signing this
agreement, which act, in the judgment of the United States,
constituted obstruction of justice within the meaning of U.S.S.G.
§ 3C1.1, the United States would be free to seek the enhancement set
forth in that section and to argue that defendant is not entitled to
a downward adjustment for acceptance of responsibility under U.S.S.G.
§ 3E1.1.

15.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

16.  Defendant and the United States reserve the right to argue
for a sentence outside the sentencing range established by the
Sentencing Guidelines based on the factors set forth in 18 U.S.C.
§ 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<center>WAIVER OF CONSTITUTIONAL RIGHTS</center>

17.  Defendant understands that by pleading guilty, defendant
gives up the following rights:

     a.  The right to persist in a plea of not guilty.

<center>22</center>

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel — and if necessary have the Court appoint counsel — at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the Court appoint counsel — at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

18.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that

23

the statement of facts provided herein is insufficient to support
defendant's pleas of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

19.  Defendant agrees that, provided the Court imposes a total
term of imprisonment within or below the range corresponding to an
offense level of 29 and the criminal history category calculated by
the Court, defendant gives up the right to appeal all of the
following: (a) the procedures and calculations used to determine and
impose any portion of the sentence; (b) the term of imprisonment
imposed by the Court; (c) the fine imposed by the Court, provided it
is within the statutory maximum; (d) to the extent permitted by law,
the constitutionality or legality of defendant's sentence, provided
it is within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
$1,825,012; (f) the term of probation or supervised release imposed
by the Court, provided it is within the statutory maximum; and
(g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in Second
Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20.  Defendant also gives up any right to bring a post-
conviction collateral attack on the convictions or sentence,
including any order of restitution, except a post-conviction
collateral attack based on a claim of ineffective assistance of
counsel, a claim of newly discovered evidence, or an explicitly
retroactive change in the applicable Sentencing Guidelines,
sentencing statutes, or statutes of conviction.  Defendant

understands that this waiver includes, but is not limited to,
arguments that the statutes to which defendant is pleading guilty are
unconstitutional, and any and all claims that the statement of facts
provided herein is insufficient to support defendant's pleas of
guilty.

21.   The United States agrees that, provided (a) all portions of
the sentence are at or below the statutory maximum specified above
and (b) the Court imposes a term of imprisonment within or above the
range corresponding to an offense level of 20 and the criminal
history category calculated by the Court, the United States gives up
its right to appeal any portion of the sentence, with the exception
that the United States reserves the right to appeal the amount of
restitution ordered if that amount is less than $1,825,012.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

22.   Defendant agrees that if, after entering guilty pleas
pursuant to this agreement, defendant seeks to withdraw and succeeds
in withdrawing defendant's guilty pleas on any basis other than a
claim and finding that entry into this plea agreement was
involuntary, then (a) the United States will be relieved of all of
its obligations under this agreement; and (b) should the United
States choose to pursue any charge or any civil, administrative, or
regulatory action that was either dismissed or not filed as a result
of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent

that such defenses existed as of the date of defendant's signing this
agreement.

<div align="center">RESULT OF VACATUR, REVERSAL, OR SET-ASIDE</div>

23. Defendant agrees that if any count of conviction is
vacated, reversed, or set aside, the United States may: (a) ask the
Court to resentence the defendant on any remaining counts of
conviction, with both the United States and defendant being released
from any stipulations regarding sentencing contained in this
agreement, (b) ask the Court to voice the entire plea agreement and
vacate defendant's guilty pleas on any remaining counts of
conviction, with both the United States and defendant being released
from all their obligations under this agreement, or (c) leave
defendant's remaining convictions, sentence, and plea agreement
intact.  Defendant agrees that the choice among these options rests
in the exclusive discretion of the United States.

<div align="center">EFFECTIVE DATE OF AGREEMENT</div>

24. This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and a
Trial Attorney for the U.S. Department of Justice.

<div align="center">BREACH OF AGREEMENT</div>

25. Defendant agrees that if defendant, at any time after the
signature of this agreement and execution of all required
certifications by defendant, defendant's counsel, and a Trial
Attorney, knowingly violates or fails to perform any of defendant's
obligations under this agreement ("a breach"), the United States may
declare this agreement breached.  All of defendant's obligations are
material, a single breach of this agreement is sufficient for the
United States to declare a breach, and defendant shall not be deemed

to have cured a breach without the express agreement of the United States in writing.  If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the United States will be relieved of all its obligations under this agreement.

26.  Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any

1  evidence derived from the statements should be suppressed or are

2  inadmissible.

3  <center>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</center>

4  <center>OFFICE NOT PARTIES</center>

5      27.  Defendant understands that the Court and the United States

6  Probation and Pretrial Services Office are not parties to this

7  agreement and need not accept any of the United States' sentencing

8  recommendations or the parties' agreements to facts or sentencing

9  factors.

10      28.  Defendant understands that both defendant and the United

11  States are free to: (a) supplement the facts by supplying relevant

12  information to the United States Probation and Pretrial Services

13  Office and the Court, (b) correct any and all factual misstatements

14  relating to the Court's Sentencing Guidelines calculations and

15  determination of sentence, and (c) argue on appeal and collateral

16  review that the Court's Sentencing Guidelines calculations and the

17  sentence it chooses to impose are not error, although each party

18  agrees to maintain its view that the calculations in paragraph 14 are

19  consistent with the facts of this case.  While this paragraph permits

20  both the United States and defendant to submit full and complete

21  factual information to the United States Probation and Pretrial

22  Services Office and the Court, even if that factual information may

23  be viewed as inconsistent with the facts agreed to in this agreement,

24  this paragraph does not affect defendant's and the United States'

25  obligations not to contest the facts agreed to in this agreement.

26      29.  Defendant understands that even if the Court ignores any

27  sentencing recommendation, finds facts or reaches conclusions

28  different from those agreed to, and/or imposes any sentence up to the

<center>28</center>

maximum established by statute, defendant cannot, for that reason,
withdraw defendant's guilty pleas, and defendant will remain bound to
fulfill all defendant's obligations under this agreement.   Defendant
understands that no one — not the prosecutor, defendant's attorney,
or the Court — can make a binding prediction or promise regarding the
sentence defendant will receive, except that it will be between the
statutorily mandated sentence and the statutory maximum.

<div align="center">NO ADDITIONAL AGREEMENTS</div>

30.   Defendant understands that, except as set forth herein,
there are no promises, understandings, or agreements between the
United States and defendant or defendant's attorney, and that no
additional promise, understanding, or agreement may be entered into
unless in a writing signed by all parties or on the record in court.

1
<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2
    31.   The parties agree that this agreement will be considered

3
part of the record of defendant's guilty plea hearing as if the

4
entire agreement had been read into the record of the proceeding.

5
AGREED AND ACCEPTED

6
UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF

7
CALIFORNIA

8
BILAL A. ESSAYLI
United States Attorney

9

10
_____    7/1/2025
MICHAEL BACHARACH              Date

11
SARAH E. EDWARDS
ALLISON L. MCGUIRE

12
Trial Attorneys

13
_____    6/30/25
JUAN CARLOS ESPARZA          Date

14
Defendant

15
_____    7/1/25
GEORGE MGDESYAN             Date

16
Attorney for Defendant

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough
time to review and consider this agreement, and I have carefully and
thoroughly discussed every part of it with my attorney.  I understand
the terms of this agreement, and I voluntarily agree to those terms.
I have discussed the evidence with my attorney, and my attorney has
advised me of my rights, of possible pretrial motions that might be
filed, of possible defenses that might be asserted either prior to or
at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
of relevant Sentencing Guidelines provisions, and of the consequences
of entering into this agreement.  No promises, inducements, or
representations of any kind have been made to me other than those
contained in this agreement.  No one has threatened or forced me in
any way to enter into this agreement.  I am satisfied with the
representation of my attorney in this matter, and I am pleading
guilty because I am guilty of the charges and wish to take advantage
of the promises set forth in this agreement, and not for any other
reason.

_____          ___6/30/25_____
JUAN CARLOS ESPARZA                  Date
Defendant

//

31

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am JUAN CARLOS ESPARZA's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

GEORGE MGDESYAN
Attorney for Defendant JUAN CARLOS
ESPARZA

Date 7/1/25