# Exhibit A

**DECLARATION OF SPECIAL AGENT TRAVIS PFORR**

I, Travis Pforr, declare and state as follows:

## I.     INTRODUCTION

1.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), assigned to the Los Angeles Field Office, and have been so employed since March 2017.  I received 20 weeks of formal training at the FBI Academy in Quantico, Virginia.  I spent my first three years investigating violent gangs, and the following years to date investigating health care fraud.  During the time I have been employed as an FBI Special Agent, I have participated in investigations relating to health care fraud and have learned from other agents who are experienced in investigations of health care fraud.  As a result of my training and experience, I am familiar with the federal laws relating to health care fraud, as well as common health care fraud techniques and schemes operating in Southern California.  As a Special Agent, I am responsible for enforcing federal criminal statutes over which the FBI has investigative jurisdiction, including health care fraud, wire fraud, identity theft and money laundering.

2.    I am a case agent assigned to the investigation of Juan Carlos Esparza and others that gave rise to the present case, *United States v. Juan Carlos Esparza*, 2:24-cr-00348-SVW-2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, documents and records that were collected and reviewed during this investigation, information that was obtained from interviewed witnesses and

1

cooperators, and information gathered by other law enforcement officers.

3.    Because this declaration is being submitted for the limited purpose of supporting the Government's Sentencing Memorandum, I have set forth only those facts that are necessary to support the Government's Memorandum.  Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part.  The events described in this affidavit occurred on or about the dates provided herein.  Where figures, calculations, dates, and times are reported herein, they are approximate.

## II.  FACTS

4.    Through my investigation in this case, I reviewed records related to a credit card application submitted by Esparza in July 2019.  On the credit card application, Esparza stated that he was a minister for Healthy Life Hospice and had an annual income of $60,000.

5.    I have also reviewed records from a phone seized from Esparza in 2022.  Text messages from this phone include the January 21, 2022, text messages between Fichidzhyan and Esparza that were previously filed in this case in which Fichidzhyan sends Esparza personal information for the Impersonated Identity I.S., as well as two photographs and states "I need the id." The address to be listed as I.S.'s address on the driver's license was actually Esparza's home address.  These messages are included as Exhibit C.

2

6.    From my review of Esparza's phone, I know that on January 21, 2022, Esparza also contacted an individual who agreed to make a false driver's license in the name of I.S. using the information that Esparza provided.  Esparza and this individual discussed payment for the false identification and the address where Esparza could pick it up.  Esparza exchanged additional text messages with the same phone number that appear to be about additional false driver's licenses in August and September of 2022, including exchanging pictures for potential use in the false identification documents.  Esparza's text messages with this individual are in Spanish.  To my knowledge, none of Esparza's co-defendants speak Spanish.

7.    Additional text messages on Esparza's phone include exchanges with Fichidzhyan regarding specific Medicare beneficiaries for whom the Sham Hospices submitted fraudulent claims. In one exchange, Esparza texts Fichidzhyan that a surgical center billed for a patient and Medicare "denied the claim because the patient was in hospice."  Fichidzhyan instructed Esparza to tell the surgery center "to bill us."

8.    In September 2022, multiple search warrants were executed in this investigation.  In the course of those searches, law enforcement recovered identification documents for two additional Impersonated Identities using Esparza's home address as the address for the Impersonated Identity.  The Impersonated Identities whose documentation included Esparza's address were Y.B. and I.P.

3

9.   Documents related to the fraudulent scheme were also recovered from the House of Angels office during the September 2022 search.  Medicare forms bearing Esparza's signature that were recovered during the search are included as Exhibit E to this filing.  Communications from other medical providers are included as Exhibit F to this filing.

10.  I am aware that in June 2020, Esparza was arrested by the Glendale police department and spoke with an officer.  At the time of his arrest, Esparza was in possession of mail addressed to the Impersonated Identity I.P. at Esparza's home address.  Esparza told the Glendale police that I.P. was a friend of his who lived in the area.  From reviewing I.P.'s border crossing records, I know that I.P. left the United States in 2013.  I also know, from reviewing materials found in the execution of the search warrants in this case, that I.P. was one of the Impersonated Identities utilized by Esparza and his codefendants.

11.  At the time of his 2020 arrest, Glendale police seized Esparza's phone.  Law enforcement in this investigation subsequently obtained a warrant to view Esparza's "Glendale phone" in addition to the phone discussed above.  Text messages stored on the Glendale phone show that Esparza also obtained fraudulent identity documents for the Impersonated Identities D.G. and A.M. in April 2020. In addition, I reviewed pictures of several Post-It notes that, based upon my investigation, appeared to be scripts that Esparza could use when contacted by

4

medical providers whose claims had been denied as a result of the fraud.

12.  Specifically, one of the photographs on Esparza's Glendale phone is a photograph of a Post-It note that says "This was a [sic] error in billing.  Our biller canceled the claim and you will be able to bill in 7 business days."  A second photograph is of a different Post-It note that says "We checked and we don't have a patient with that name - we checked the billing and it was a mistake and we canceled it."  Text messages between Esparza and Fichidzhyan December 2019 and January 2020 show Fichidzhyan directing Esparza as to how to respond to inquiries regarding specific patients.

13.  I have reviewed bank records for the House of Angels bank account ending in x8151.  House of Angels received approximately $1,386,497 from Medicare as a result of the fraudulent scheme.  Esparza was the sole signatory on the House of Angels Account.  I have also reviewed bank surveillance footage that shows Esparza withdrawing large sums of cash from the House of Angels bank account.

14.  I have also reviewed records for Esparza's personal bank account ending in x5039. The first deposit into Esparza's personal bank account from Healthy Life Hospice occurred on August 8, 2019.  Attached as Exhibit D is a summary of the fraudulent proceeds Esparza controlled and received that includes the sources of proceeds deposited into Esparza's personal account, a total of $438,515.

5

15.    The Medicare funds that Esparza controlled in the House of Angels account, together with the fraudulent proceeds that Esparza received in his personal bank account, total $1,825,012.

September 22, 2025

_____/s/_____
TRAVIS PFORR
Special Agent, FBI