# Exhibit B

Previously Filed at ECF 121-1

DECLARATION OF SPECIAL AGENT TRAVIS PFORR

I, Travis Pforr, declare and state as follows:

**I.    INTRODUCTION**

1.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), assigned to the Los Angeles Field Office, and have been so employed since March 2017.  I received 20 weeks of formal training at the FBI Academy in Quantico, Virginia.  I spent my first three years investigating violent gangs, and the following years to date investigating health care fraud.  During the time I have been employed as an FBI Special Agent, I have participated in investigations relating to health care fraud and have learned from other agents who are experienced in investigations of health care fraud.  As a result of my training and experience, I am familiar with the federal laws relating to health care fraud, as well as common health care fraud techniques and schemes operating in Southern California.  As a Special Agent, I am responsible for enforcing federal criminal statutes over which the FBI has investigative jurisdiction, including health care fraud, wire fraud, identity theft and money laundering.

2.    I am a case agent assigned to the investigation of Petros Fichidzhyan and others that gave rise to the present case, United States v. Petros Fichidzhyan, et al., 2:24-cr-00348-SVW.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, documents and records that were collected and reviewed during this investigation, information that was obtained from interviewed

1

witnesses and cooperators, and information gathered by other law enforcement officers.

3.    Because this declaration is being submitted for the limited purpose of supporting the Government's Reply Memorandum in Support of Motion for Inquiry into Conflicts of Interest Regarding the Concurrent Representation of Defendants Esparza and Srapyan, I have not included every detail of every aspect of the investigation.  Rather, I have set forth only those facts that I believe are necessary to support the Government's Memorandum.  Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part.  The events described in this affidavit occurred on or about the dates provided herein.  Where figures, calculations, dates, and times are reported herein, they are approximate.

## II.  <u>FACTS</u>

4.    Beginning no later than in July 2019, FICHIDZHYAN, ESPARZA, and SRAPYAN operated a scheme to defraud Medicare through sham hospices.

5.    For use as straw owners of hospice companies, the coconspirators obtained the names, dates of birth, social security numbers, and other personal identifying information of foreign persons (typically from Russia or Ukraine) who at one time had been present in the United States on U.S. visas, but had departed the United States (the "Impersonated Identities"), including, among others, B.L., D.G., A.M., and I.S.

6.    FICHIDZHYAN, ESPARZA, and SRAPYAN established control over the sham hospice entities, including Healthy Life Hospice, Inc. ("Healthy Life"), Prayer of Hope Hospice ("Prayer of Hope"), Dynamic Hospice Care, Inc. ("Dynamic"), and House of Angels Hospice, Inc. ("House of Angels") (collectively, the "Sham Hospices"), and represented that the Impersonated Identities were the owners and officers of Healthy Life, Prayer of Hope, and Dynamic, including by submitting the Impersonated Identities names and identifying information to the California Secretary of State and Medicare.  The fourth sham hospice, House of Angels, was openly established in ESPARZA's name.  None of the hospices had any genuine employees or patient files dating to the period of the scheme.

7.    Between no later than in or around July 2019 and continuing to at least in or around January 2023, FICHIDZHYAN, ESPARZA, and SRAPYAN submitted or caused to be submitted false and fraudulent claims to Medicare on behalf of the Sham Hospices, seeking payment for purported hospice services on behalf of, and using the names and personal identifying information of, Medicare beneficiaries who in fact were ineligible for hospice services covered by Medicare, not terminally ill, and had never elected or received hospice care from the Sham Hospices.  At least 50 purported beneficiaries (or their representatives) of the Sham Hospices were interviewed by investigators, and none of them reported ever receiving treatment from the Sham Hospices.

3

8.    SRAPYAN at times went by the nickname "Kbo."  He admitted this when interviewed by FBI in September 2022.

9.    The evidence collected in this case shows that SRAPYAN and ESPARZA are both connected to each of the four Sham Hospices.

**Healthy Life**

10.    For instance, in Healthy Life materials filed with the State of California, Impersonated Identity B.L. was named as the CEO, Secretary, and CFO of Healthy Life.  SRAPYAN is known to have impersonated B.L., including by:

a.    Posing as B.L. to sign leases -- both for SRAPYAN's personal residence (as explained by his landlord), for the Healthy Life office storefront, and for the Dynamic office storefront (as charged in Count Eight), the latter of which was confirmed by matching the fingerprint taken by the notary at the lease signing with SRAPYAN's fingerprints;

b.    Using credit cards in B.L.'s name to shop at Costco and to order food deliveries, as verified by records from Costco and the food delivery service;

c.    Possessing a fake California driver's license in B.L.'s name, as charged in Count Nine;

d.    Conducting financial transactions involving bank accounts in Healthy Life's name with B.L. as the signatory or in a personal account in B.L.'s name, as shown by bank and ATM surveillance footage.

11.    ESPARZA is also connected to Healthy Life:

4

a.    On a bank application, ESPARZA falsely stated that he was employed as a minister by Healthy Life and earned $60,000 per year in that role;

b.    ESPARZA and FICHIDZHYAN discussed at least ten billed Healthy Life beneficiaries via text message (two of whom were interviewed and denied receiving the hospice services);

c.    ESPARZA received $20,900 from the Healthy Life bank account ending x4545, for which the Impersonated Identity, B.L., was the signer.

### Prayer of Hope

12.    Both SRAPYAN and ESPARZA received funds from bank accounts in the name of Prayer of Hope.  Specifically:

a.    As charged in Count Nineteen, on December 3, 2021, SRAPYAN received $20,500 from the Prayer of Hope Chase Bank Account ending in x9283 into his personal bank account.

b.    SRAPYAN also received $23,400 from the Prayer of Hope bank account ending x9283 into an account in the name of a business entity for which SRAPYAN was the signatory.

c.    ESPARZA received $19,200 from the Prayer of Hope bank account ending x4460.

d.    ESPARZA received $2,400 from the Prayer of Hope bank account ending x4675.

13.    SRAPYAN also conducted at least nine financial transactions involving the Prayer of Hope bank account ending x9283, as shown by bank and ATM surveillance footage.

5

14. In addition, ESPARZA and FICHIDZHYAN discussed one Prayer of Hope beneficiary (who was interviewed and denied receiving the hospice services).

## Dynamic Hospice

15. As discussed above and charged in Count Eight, SRAPYAN posed as Impersonated Identity B.L. and signed a lease for office space for Dynamic Hospice on June 1, 2020.

16. ESPARZA was identified by a worker at a neighboring business as being present at the Dynamic storefront on multiple occasions.

17. ESPARZA worked with FICHIDZHYAN to obtain fraudulent identity documents for the Impersonated Identity for Dynamic, I.S. In January 2022, FICHIDZHYAN texted ESPARZA with the name, address, date of birth, and other personal identifying information of I.S. (together with a picture of coconspirator MIHRAN PANOSYAN) and stated "I need the Id." FICHIDZHYAN also instructed ESPARZA to pay for a cell phone in I.S.'s name: on February 5, 2021, March 9, 2021, and January 4, 2022, FICHIDZHYAN sent text messages to ESPARZA requesting that ESPARZA pay the phone bill for a cell phone in Impersonated Identity I.S.'s name. ESPARZA also received mail at his personal residence in the name of I.S., including bank statements.

18. ESPARZA received $36,500 from the Dynamic Hospice bank account ending x1703, for which the Impersonated Identity I.S. was the signatory. SRAPYAN deposited at least ten checks

6

totaling more than $600,000 written from this Dynamic Hospice bank account.

19.  In addition, ESPARZA and FICHIDZHYAN discussed four billed Dynamic beneficiaries (two of whom were interviewed and denied receiving the hospice services).

### House of Angels

20.  ESPARZA was the owner of House of Angels in paperwork submitted to the California Secretary of State and was also listed as the signatory on the House of Angels bank account ending x8151.  ESPARZA purchased a vehicle using fraudulent proceeds from the House of Angels bank account as charged in Count Twenty.

21.  ESPARZA purchased a luxury Mercedes vehicle using $90,000 in fraudulent proceeds from the House of Angels bank account, as charged in Count 20.

22.  In addition, ESPARZA and FICHIDZHYAN discussed five billed House of Angels beneficiaries (all five of whom were interviewed and denied receiving the hospice services).

23.  Two witnesses recalled seeing SRAPYAN with ESPARZA in connection with House of Angels.  The first was a receptionist at a neighboring business who identified ESPARZA, SRAPYAN, and FICHIDZHYAN based on photographs.  The receptionist recalled seeing ESPARZA and SRAPYAN at the House of Angels office approximately six times between the fall of 2021 and September of 2022; she also recalled one instance where FICHIDZHYAN, ESPARZA, and SRAPYAN all came to the office together, and FICHIDZHYAN departed before SRAPYAN or ESPARZA.  A second

7

witness, the property manager for the House of Angels office, recalled seeing ESPARZA approximately once a month at the property when he paid rent, and stated that ESPARZA was typically accompanied by another male.  In a follow up interview, the property manager stated that she was almost certain that the other male that accompanied ESPARZA was SRAPYAN based on photographs.

### Representation of Fichidzhyan

24.  At the conclusion of a recorded interview with investigators on September 8, 2022, Petros Fichidzhyan stated that he was represented by George Mgdesyan.

November 27, 2024

_____/s/_____
TRAVIS PFORR
Special Agent, FBI

8