David Yerkanyan (SBN 343516)
4529 Sherman Oaks Ave.
Sherman Oaks, CA 91403
Telephone: (818) 939-2287
Facsimile: (818) 754-6778
Email: BDDAVIDY@gmail.com

Attorney for Defendant
KARPIS SRAPYAN

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### —WESTERN DIVISION—

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No: 2:24-CR-00348-SVW-3 |
| Plaintiff, | ) <br> ) DEFENDANT'S SENTENCING <br> ) MEMORANDUM; EXHIBITS |
| vs. | )) |
| | ) Sentencing Date: October 6, 2025 <br> )          Time: 11:00 a.m. |
| KARPIS SRAPYAN, | ) |
| Defendant. | ) <br> THE HON. STEPHEN V. WILSON |

Defendant Karpis Srapyan, by and through his attorney of record, David Yerkanyan, hereby submits his Sentencing Memorandum and Exhibits pursuant to Federal Rule of Criminal Procedure 32, setting forth the factors the Court should consider in determining what type of sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing pursuant to 18 U.S.C. §3553(a).

The attached memorandum is based upon the Presentence Investigation Report, attached exhibits, the Defendant's previously filed Objections to the PSR (dkt. 217), the files and records in this matter, and any other documents or evidence the Court may wish to consider.

For the reasons discussed in detail below, Mr. Srapyan respectfully requests the Court grant a varied/split sentence of 24 months of incarceration, followed by three years of supervised release, including a condition of 18 months of community confinement.

Dated:  September 22, 2025                    Respectfully submitted,

                                             /s/ *David Yerkanyan*
                                             DAVID YERKANYAN
                                             Attorney for Defendant
                                             KARPIS SRAPYAN

,

# TABLE OF CONTENTS

**Page**

DEFENDANT'S SENTENCING MEMORANDUM ...................................................... 1

I.      INTRODUCTION .................................................................................................. 1

II.     THE SENTENCE MUST BE "SUFFICIENT, BUT NOT GREATER THAN
        NECESSARY" TO ACHIEVE THE PURPOSES OF SENTENCING UNDER
        THE STATUTORY DIRECTIVES OF § 3553(a)................................................... 3

        A.      The Nature & Circumstances of The Offense & The History and
                Characteristics of The Defendant Warrant a Non-Guidelines Sentence....... 4

        B.      The Need for The Sentence Imposed To: ................................................... 9

                i.      Reflect The Seriousness of The Offense, To Promote Respect for
                        The Law, And to Provide Just Punishment for The Offense............. 9

                ii.     Afford Adequate Deterrence to Criminal Conduct......................... 12

                iii.    To Protect the Public from Further Crimes of The Defendant........ 15

        C.      The Money Laundering and Fraud Guidelines Prescribe Sentences Far
                Greater Than Necessary to Achieve the Purposes of Sentencing .............. 15

III.    CONCLUSION .................................................................................................. 16

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## **U.S. SUPREME COURT CASES**

*United States v. Booker*, 543 U.S. 220 (2005).................................................................passim

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007) ...........................................passim

*Kimbrough v. United States*, 128 S. Ct. 558 (2007)...................................................9, 16

*Morrissey v. Brewer,* 408 U.S. 471, 480 (1972) .........................................................14

*Pepper v. United States*, 131 S. Ct 1220 (2011) .........................................................12

*Rita v. United States*, 127 S.Ct. 2456 (2007) ...........................................................5, 16

*Spears v. United States*, 129 S. Ct. 840 (2009)...........................................................16

*Santosky v. Kramer,* 445 U.S. 745 (1982) .................................................................6

*Spears v. United States*, 129 S. Ct. 840 (2009)...........................................................16

*Williams v. New York,* 337 U.S. 241 (1949) ..............................................................6

## **CIRCUIT COURT CASES**

*United States v. Autery*, 555 F.3d 864 (9th Cir. 2009).................................................13

*United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) ................................................12

*United States v. Bueno*, 549 F.3d 1176 (8th Cir. 2008) .............................................7

*United States v. Dominguez,* 296 F.3d 192 (3rd Cir. 2002) .....................................8

*United States v. Foreman*, 436 F.3d 638 (6th Cir. 2006) .........................................5

*United States v. Hadash*, 408 F.3d 1080 (8th Cir. 2005) .........................................4

*United States v. Husein,* 478 F.3d 318 (6th Cir. 2007) ............................................7

*United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011).......................................12

ii

1

## TABLE OF AUTHORITIES (cont.)

2

Page(s)

*United States v. Jones*, 460 F.3d 191 (2d Cir. 2008) ............................................................15

*United States v. McBride,* 434 F.3d 470 (6th Cir. 2006)........................................................3

*United States v. Menyweather,* 447 F.3d 625 (9th Cir. 2006) ................................................5

*United States v. Olhovsky*, 562 F.3d 530 (3d Cir. 2009) ........................................................6

*United States v. Rivera*, 192 F.3d 81 (2d Cir. 1999)..............................................................6

*United States. v. Sachsenmaier*, 491 F.3d 680 (7th Cir. 2007)..............................................6

*United States v. Schroeder*, 536 F.3d 746 (7th Cir. 2008) .....................................................9

*United States v. Simmons* (Simmons II), 568 F.3d 564 (5th Cir. 2009)..................................9

*United States v. Stuart*, 22 F.3d 76 (3d Cir. 1994)................................................................10

*United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) ...........................................5, 12, 14

*United States v. Yopp*, 453 F3d 770 (6th Cir. 2006) ..............................................................5

## **DISTRICT COURT CASES**

*United States* v. *Adelson,* 441 F.Supp.2d 506 (S.D.N.Y. 2006) ........................................... 10

*United States v. Garcia-Lopez*, 691 F.Supp.2d 1099 (C.D. Cal. 2010) ..................................3

*United States v. Gupta*, 2012 U.S. Dist. LEXIS 154226 (S.D.N.Y. 2012) ..................... 10, 16

*United States v. Johnson*, 2018 U.S. Dist. LEXIS 71257 (E.D.N.Y. Apr. 26, 2018)............10

*United States v. Moody*, 2013 U.S. Dist. LEXIS 109506 (D. Colo. Aug. 5, 2013)...............10

*United States v. Myers*, 353 F. Supp. 2d 1026 (S.D. Iowa 2005) .........................................14

*United States* v. *Parris,* 573 F.Supp.2d 744 (E.D.N.Y. 2008) .............................................10

*United States v. Watt*, 707 F. Supp. 2d 149 (D. Mass. 2010) ...............................................10

iii

# TABLE OF AUTHORITIES (cont.)

**STATUTES & CONGRESSIONAL REPORTS**

<strong>Page(s)</strong>

18 U.S.C. § 1957 ...................................................................................................2

18 U.S.C. § 3551 .................................................................................................12

18 U.S.C. § 3553 ...........................................................................................passim

18 U.S.C. § 3563 ...................................................................................................4

18 U.S.C. § 3583 ...................................................................................................4

18 U.S.C. § 3661 ...................................................................................................4

28 U.S.C. § 994 ...................................................................................................11

Public Law No. 98-473, § 239, 98 Stat. 1987, 2039 (1984)................................11

**U.S. SENTENCING GUIDELINES**

§ 2A2.2.................................................................................................................11

§ 2A3.2.................................................................................................................11

§ 2B1.1...............................................................................................................1, 2

§ 2B3.1.................................................................................................................11

§ 2S1.1...............................................................................................................1, 2

§ 3B1.2..................................................................................................................2

§ 3E1.1...............................................................................................................1, 2

§ 4C1.1..................................................................................................................2

**U.S. SENTENCING COMMISSION STATISTICS AND SURVEYS**

U.S.S.C, *Quick Facts: Health Care Fraud, fiscal year 2024,* at p.2, available at
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-
facts/Health_Care_Fraud_FY24.pdf ...................................................................15

U.S.S.C, *Quick Facts: Money Laundering Offenses, fiscal year 2024,* at p.2, available at
https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-
facts/Money_Laundering_FY24.pdf .....................................................................15

## DEFENDANT'S SENTENCING MEMORANDUM

## I.
## INTRODUCTION

On June 5, 2024, a twenty-three count Indictment was filed against defendant Karpis Srapyan and four others in the matter captioned United States v. Petros Fichidzhyan, et al., CR-24-00348-SVW. See Indictment at dkt no. 1.

On June 30, 2025, Mr. Srapyan accepted responsibility for his conduct and pleaded guilty, pursuant to a written plea agreement, to Count One and Nineteen, Conspiracy to Commit Health Care Fraud and Criminal Monetary Transactions, respectively. See Plea Agreement at dkt no. 186 (hereinafter, cited as "P.A.").

The parties stipulated to the following Guidelines application:

| | | | |
|---|---|---:|---|
| Base Offense Level: | | 6 | [§2S1.1(a)(1), §2B1.1(a)(2)] |
| | | +16 | [§2B1.1(b)(1)(I)(loss amount over $1.5m)] |
| Specific Offense | | | |
| Characteristics: | | +2 | [§2B1.1(b)(7)(Health Care Fraud > $1m)] |
| | | +2 | [§2B1.1(b)(11)(C)(means of identification)] |
| | | +1 | [§2S1.1(b)(2)(conviction under §1957)] |
| Acceptance | | -3 | [§3E1.1(a), (b)] |
| Total Offense Level | | = 24 | |

PA at p.21. The parties agreed not to seek, argue or suggest that any other factors apply, except: (1) a two-level reduction for zero-point offender; (2) a two-level enhancement for sophisticated means; and (3) a two-level reduction for minor role. Id. at p.22.

On August 29, 2025, the United States Probation Office ("USPO") disclosed the PSR, which includes the following Guidelines' assessment:

- 1 -

| Base Offense Level: | 6 | [§2S1.1(a)(1), §2B1.1(a)(2)] |
|---|---|---|
|  | +16 | [§2B1.1(b)(1)(I)(loss amount over $1.5m)] |
| Specific Offense Characteristics: | +2 | [§2B1.1(b)(7)( Health Care Fraud over $1m)] |
|  | **+2** | **[§2B1.1(b)(10)(C)(sophisticated means)]** |
|  | +2 | [§2B1.1(b)(11)(C)(means of identification)] |
|  | +1 | [§2S1.1(b)(2)(conviction under §1957)] |
| Acceptance | -3 | [§3E1.1(a), (b)] |
| Adjustments | **-2** | **[§4C1.1(a)(zero-point offender)]** |
| Total Offense Level | = 24 |  |

PSR, dkt. 209, at ¶¶ 71–89. The USPO also found that defendant was an "average" participant within the offenses and thus did not apply a minor role reduction. PSR ¶¶ 77-81.

Based on an advisory Guideline range of 51 to 63 months, the USPO is recommending a sentence of 51 months' incarceration, followed by 3 years of supervised release. See Rec Ltr. at dkt no. 208.

Defendant previously filed his objections to the PSR as to the enhancement for sophisticated means and the failure to apply a two-level decrease for being a minor participant within the overall conspiracy. See Obj. to PSR at dkt no. 217.

Thus, defendant submits that the appropriate Guidelines calculations are as follows:

| Base Offense Level: | 6 | [§2S1.1(a)(1), §2B1.1(a)(2)] |
|---|---|---|
|  | +16 | [§2B1.1(b)(1)(I)(loss amount over $1.5m)] |
| Specific Offense Characteristics: | +2 | [§2B1.1(b)(7)(Health Care Fraud >$1m)] |
|  | +2 | [§2B1.1(b)(11)(C)(means of identification)] |
|  | +1 | [§2S1.1(b)(2)(conviction under §1957)] |
| Adjustments | **-2** | **[§3B1.2(b)(minor participant)]** |
| Acceptance | -3 | [§3E1.1(a), (b)] |
| Criminal History Adj. | -2 | [§4C1.1(a)(zero-point offender)] |
| Total Offense Level | = 20 |  |

- 2 -

At criminal history category I, the resulting advisory sentencing range is 33 to 41 months. This should be "the starting point and initial benchmark" prior to evaluating section 3553(a) factors. *See Gall v. United States*, 552 U.S. 38, 49 (2007).

## II.
## THE SENTENCE MUST BE "SUFFICIENT, BUT NOT GREATER THAN NECESSARY" TO ACHIEVE THE PURPOSES OF SENTENCING UNDER THE STATUTORY DIRECTIVES OF § 3553(a)(2)

In determining whether to grant Mr. Srapyan's request for a varied/split sentence of 24 months of incarceration, followed by three years of supervised release, including a condition of 18 months of community confinement, the Court is respectfully asked to base its decision on the totality of the factors present in this case. The mitigating factors in combination strongly suggest that the requested sentence would be "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.[1]

In support of this request, the Court is asked to consider that the Guidelines' range fails to account for: (1) the actual amount Mr. Srapyan personally benefited from this offense and the extraordinary efforts he is willing to put forth to pay the entire restitution amount irrespective of his actual benefits from participating in the offense; (2) Mr. Srapyan's low risk of recidivism and family-ties and responsibilities; (3) his troubled upbringing; and (4) is the

---

[1]  *See United States v. Garcia-Lopez*, 691 F. Supp. 2d 1099 (C.D. Cal. 2010) ("These mitigating factors taken together, and not any one factor in isolation, are so significant and unaccounted for in the Guidelines that they make a Guidelines sentence completely inappropriate. . . As the Supreme Court has noted, 'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.'" *Id.* at 1105 (*quoting Gall, supra*).

product of a guideline that has multiple overlapping enhancements based on the same

essential conduct and thus, is far greater than necessary to achieve the goals of sentencing.

The requested sentence will enable Mr. Srapyan to continue working after his term of

imprisonment to support his dependents, including his one-year-old son and his ill mother

(currently undergoing cancer treatments) and meet other family responsibilities (see 18

U.S.C. § 3563(b)(1)) and make restitution payments to the victims of the offense

(§3563(b)(2)). See §3583(d)(authorizing use of "Discretionary Conditions" of probation

during supervised release under §3563(b)(11), (b)(19)).

## A.    The Nature And Circumstances Of The Offense & The History And Characteristics Of The Defendant Warrant A Non-Guidelines Sentence

The following social history of Karpis Srapyan is provided in the spirit of 18 U.S.C. §

3661, which states "that no limitation shall be placed on the information concerning the

background, character and conduct of a person convicted of an offense which a Court of the

United States may receive and consider for the purpose of imposing an appropriate sentence."

Karpis, age 35, has accepted responsibility for his actions, demonstrated remorse and

now comes before this Court for sentencing. Karpis is a first-time, non-violent, white-collar

offender, who has lived a law-abiding life for the vast majority of his years.[2]

---

[2] *See United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (six level downward departure upheld where district court concluded that defendant was "law abiding citizen, who [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish").

Karpis was born in Armenia to the marital union of Manvel Srapyan and Elmira Tigranyan. PSR ¶99. He has one sister, Julietta, who lives in Armenia and is a full-time student. Id. ¶101.

In 2011, Karpis moved to New York and resided there until 2016, at which point he relocated to Los Angeles. PSR ¶102. Although Karpis has a very close relationship with his mother, he has not had any contact with his father since he was a teenager. Id. ¶100. His father was a severe alcoholic who physically and emotionally abused his mother and him. Id. ¶¶103-104.

Since elementary school, Karpis worked to help support his family due to his father's inability to find steady employment—selling newspapers, collecting recycling off the streets, helping in construction sites, and opening doors at weddings to receive tips from partygoers. Id. ¶104. Although he and his mother worked to earn what they could, his father would occasionally steal the money to fund his alcoholism.[3] The family often struggled financially on account of his father's actions. Karpis often wearing hand-me-down clothes and food being scarce. Id.

Karpis' father would become extremely violent toward his mother, and sometimes punched, slapped and threw objects at Karpis as well when he tried to defend his mother. PSR ¶105. His father's physical abuse of his mother resulted in a broken nose, constant bruises and eventually caused permanent hearing loss to her left ear. Id. His father's "abuse was abuse was so bad, that the family would hide any object that [his father] could possibly use or

---

[3]  The PSR contains an error, noting defendant's mother (Tigranyan) as the one who stole the money to support her alcoholism. See ¶104.

- 5 -

throw, because they knew that when he inevitably became violent, he would reach for the nearest item to use against them." Id. There was "a time when he was approximately 13 or 14 years old, where [his father] chased them with an axe, which caused them to flee to a neighbor's home. [His father] tried to break down the door with the axe, but fortunately the door was made of metal and he could not gain entry. Following this incident, [his mother] knew that she needed to leave [his father], but [his sister] Julietta was sick in the hospital, and she wanted to wait until Julietta was fully recovered." Id. ¶105.

After years of abuse, his mother took him and his sister and moved back to her parents' house. Id. ¶106. His father continued to stalk and harass them, appearing on their doorstep drunk and demanding to let him in, eventually resulting in his mother escaping to the United States. Id. Although he was never diagnosed, Karpis suffered from anxiety and depression in the past, leaving permanent psychological damage that "will never truly go away." PSR ¶114. The Supreme Court and multiple courts throughout the country have found that abuse suffered during childhood is valid grounds for a departure from the guidelines' recommended sentence.[4]

Karpis remained in the care of his grandparents until he, too, moved to the United States. During this time, Karpis focused on school and worked part-time. PSR ¶107. He

---

[4] See *Santosky v. Kramer*, 455 U.S. 745, 789 (1982)(Rehnquist, J., joined by Burger, C.J., White, and O'Connor, J., dissenting) ("It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens"); *United States v. Rivera*, 192 F.3d 81, 84 (2d Cir. 1999)("It seems beyond question that abuse suffered during childhood – at some level of severity – can impair a person's mental and emotional conditions...in extraordinary circumstances…district courts may properly grant a downward departure on the ground that extreme childhood abuse caused mental and emotional conditions").

- 6 -

eventually graduated high school. PSR ¶119. He then completed the Registered Nurse program and what is the equivalent to a bachelor's degree in phlebotomy from Yerevan Medical University in Armenia. PSR ¶¶ 107, 117. Although his medical credentials did not transfer over to the United States, he completed certificates for Phlebotomy Technician and Electrocardiography Technician from Concord Rusam, Inc, in New York. PSR ¶116.

When he was 21, he and his sister reunited with their mother in New York. PSR ¶108. Karpis "finally experienced what he described as a happy and normal life." Id. Karpis secured employment as a handyman and eventually an electrician. Id. After moving to Los Angeles, he worked as an Uber and Lyft driver, spending 14 to 16 hours a day driving. Id.

Karpis is a hard worker with a steady employment record, which multiple sentencing courts have found served as a basis for a variance. *See, e.g., Gall v. United States,* 552 U.S. 38, 57-58 (2007). Since his arrival in the U.S., he worked as an electrician with AP Services in New York from 2012 to 2015. PSR ¶¶ 120-122. From 2016 to 2024, he was a driver for Uber and Lyft, earning approximately $8,000 a month. Id. Since 2024, he has been employed as an electrician at AAG Services in Los Angeles. Id.

In 2018, Karpis met his current girlfriend, Elizaveta Bilvakova, and the couple now has a son, Mike, age 1. PSR ¶109. Karpis is the sole provider of his young family. Id. While they are currently living with his girlfriend's parents, they have health issues. Karpis' mother does live nearby, but she is currently undergoing cancer treatments. Id.[5]

---

[5]  *See United States v. Bueno*, 549 F.3d 1176 (8th Cir. 2008) (approving variance to probation to allow defendant convicted of distribution of five 37 kilograms of cocaine to care for wife suffering from lupus and rheumatoid arthritis; *United States v. Husein*, 478 F.3d 318 (6th Cir. 2007) (270 days home confinement followed by supervised release to allow defendant

Multiple character reference letters are attached hereto as Exhibit A. The theme that runs through these letters is of a kind, generous and loving family-man who made a serious mistake in an otherwise law-abiding life. They unanimously described how Karpis has changed since his arrest and how he has taken steps to better the lives of others in the community

For instance, Karpis' girlfriend, Elizaveta, describes him as "a person of good character who has made a mistake but is capable of learning from it." Ex. A. She further conveys how incarceration will negatively impact the entire family, as Karpis is the sole breadwinner at this time. Id.

Elizaveta's mother, Tatyana, describes her first impression of Karpis as a respectful, kind, and genuine individual. Id. She further explains how detrimental his presence is to his young family and how truly remorseful he has been. Id.

Karpis' mother, Elmira, provides a heartfelt, detailed letter about the vast struggles their family has endured at the hands of his father. Id. She also conveys how greatly remorseful he is for getting involved in the offenses which brings him before the Court. Id.

---

convicted of distributing Ecstacy to care for father incapacitated by strokes); *United States v. Dominguez,* 296 F.3d 192 (3rd Cir.2002) (in bank fraud case, district court erred in holding it could not depart four levels downward for defendant who resided with her elderly parents, who were physically and financially dependent upon her where father had undergone brain surgery and had suffered a heart attack,... circumstances were "truly tragic").

Karpis' family ties and responsibilities are a mitigating factor warranting a variance from the Guidelines.[6] Currently, aside from providing for his wife and children, Karpis provides care for his ill mother.

In *United States v. Schroeder*, 536 F.3d 746 (7th Cir. 2008), the Court stated that "extraordinary family circumstances can constitute a legitimate basis for imposing a below-guidelines sentence." *Id.* at 755. However, the Court explained that the fact that a defendant's criminal conduct was the cause of a family's hardship is "obvious" and "not dispositive." *Id.* "When a defendant presents an argument based on extraordinary family circumstances, the relevant inquiry is the effect of the defendant's absence on his family members. The defendant's responsibility for the adverse effects of his incarceration is not the determinative issue. If it were, there would never be an occasion on which the court would be justified in invoking family circumstances to impose a below-Guidelines sentence." *Id.*

**B.    The Need For The Sentence Imposed To —**

  **i.    Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense**

The current loss table is a poor proxy for relative culpability, as it fails to account for the extent to which an offender personally profited from the offense. Indeed, each offender is responsible for the total reasonably foreseeable loss attributable to all co-defendants,

---

[6] After *Booker*, it should be "pellucidly clear" that the particular factors in any given case need not be "extraordinary" to warrant a variance from the Guidelines. *Gall*, 552 U.S. at 41. Indeed, the Fifth Circuit has held unequivocally that after *Gall* and *Kimbrough*, "[w]ithout a doubt, the requirement of 'extraordinary circumstances' is no longer the law." *United States v. Simmons* (Simmons II), 568 F.3d 564, 568 (5th Cir. 2009) (citation omitted).

- 9 -

regardless of how much each offender personally profited from that amount. Accordingly, an offender who saw no profit at all or a nominal amount of profit will be sentenced just as harshly under the loss table as the mastermind who received the greatest share of the profits. This calculation thus fails to fairly account for relative culpability among offenders and results in disproportionately high sentences for more marginal co-conspirators. *See United States v. Watt*, 707 F. Supp. 2d 149, 155 (D. Mass. 2010)(the loss table can "overstate both the degree of [defendant's] criminality and his need to be corrected")(*quoting United States v. Stuart*, 22 F.3d 76, 82 (3d Cir. 1994)).

As a result of these problems with the design and operation of the loss table, a broad judicial consensus has developed that Section 2B1.1's loss table overstates culpability in a great many cases. For instance, New York federal courts, which handle some of the highest volumes of fraud cases in the country, have repeatedly criticized the grossly disproportionate nature of the loss tables. They have called the loss tables "patently absurd" and "a black stain on common sense" that rely upon a "flawed methodology for tabulating white-collar sentences[.]"[7]

---

[7] *See United States v. Corsey*, 723 F.3d 366, 378 (2d Cir. 2013) (Underhill, J., concurring); *United States v. Johnson*, 2018 U.S. Dist. LEXIS 71257 at *11–12 (E.D.N.Y. Apr. 26, 2018) (reasoning that the "loss-enhancement numbers do not result from any reasoned determination of how the punishment can best fit the crime, nor any approximation of the moral seriousness of the crime"); *United States v. Gupta*, 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012); *United States v. Parris*, 573 F. Supp. 2d 744, 745, 747–48 (E.D.N.Y. 2008) (finding that application of 18-point loss enhancement was "patently absurd" and varying downward 17 points for defendant with $2.5 million loss)(*quoting United States v. Adelson*, 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006)); *see also, United States v. Moody*, 2013 U.S. Dist. LEXIS 109506, at *14 (D. Colo. Aug. 5, 2013) (adopting view that the loss guidelines are "fundamentally flawed").

Here, Karpis personally profited a few thousand dollars a month for his part in this multi-million dollar scheme. Nevertheless, he is committed to paying the entire restitution amount, even if it turns out to be a life-long obligation.

Furthermore, in considering the seriousness of the offense, it should be noted that the assessment in the PSR results in a total offense level 24 and the Guidelines advise that a term of imprisonment should be between 51 and 63 months. The absurdity of this advice must be pointed out. The Guidelines are advising this Court to punish Karpis identical to defendants found guilty at trial for discharging a firearm during an aggravated assault which results in serious bodily injury (see U.S.S.G. § 2A2.2(a), (b)(2)(A), (b)(3)(B), TOL 24) and using a firearm during a robbery (see §2B3.1(a), (b)(2)(D), TOL 24). Indeed, it also advises that a more lenient sentence is appropriate for those convicted of raping a minor under the age of sixteen (§2A3.2(a), BOL 18).

Congress directed the Sentencing Commission to "ensure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the "general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury." 28 U.S.C. § 994(j). Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and non-serious offenders, the interests of society as

- 11 -

a whole as well as individual victims of crime can continue to be served through the

imposition of alternative sentences, such as restitution and community service." *See* Pub. L.

No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551).

Karpis is plainly not a "violent and serious offender" who "pose[s] the most dangerous

threat to society."[8] To the contrary, he wishes to continue working to support his dependent

family members. He is a white-collar, non-violent offender who clearly veered off the beaten

path.[9]

### ii.    Afford Adequate Deterrence to Criminal Conduct

The Supreme Court has recognized that the likelihood a defendant will engage in

future criminal conduct is a central factor that district courts must assess when considering an

appropriate sentence. *Pepper v. United States*, 131 S.Ct. 1229, 1242 (2011), *citing*, 18 U.S.C.

§§ 3553(a)(2)(B)-(C); *Gall* at 59. Similarly, the Eleventh Circuit has also evaluated a

defendant's risk of recidivism "as a basis for a sentencing departure." *See United States v.*

*Jayyousi*, 657 F.3d 1085, 1117 (11th Cir. 2011).

---

[8]  In *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) (*per curiam*), the Ninth Circuit
affirmed a probationary sentence despite the guideline range of 41-57 months for creating
counterfeit access devices; explaining that the district court had "properly take[n] into
account" its "finding that Whitehead's [nonviolent] crime '[di]d not pose the same danger to
the community as many other crimes.'" *Id.* at 993.

[9]  *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (affirming non-guideline
sentence of 78 months from 108 months for defendant convicted of distributing child porn,
justified in part by judge's finding that prison would mean more to this defendant than one
who has been imprisoned before, which resonated with goal of "just punishment" in §
3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B).

- 12 -

The 24-month term of imprisonment requested herein, followed by three years of supervised release with an additional 18 months of community confinement serves as a deterrent. Beyond the extensive limits on a supervised releasee's freedom, yet another punishment inherent in supervision is the proverbial hangman's noose. At any slip or violation of the release conditions, the noose can be tightened and the offender imprisoned. The Ninth Circuit used this very metaphor when it upheld a probationary sentence rather than imprisonment in a child pornography case. "It is said that there is nothing like being sentenced to hang in the morning to focus a man's thoughts, and it is improbable that the district court's stern warning will be an ineffective deterrent in this case." *United States v. Autery*, 555 F.3d 864, 876 (9th Cir. 2009).

Supervised release, then, is not just a momentary loss of freedoms—it entails an overhanging and continuing threat of greater losses. Trial courts have the inherent power to tighten the noose by extending the supervised period, or exacting harsher conditions, requiring home confinement, or requiring the supervisee to serve prison time. Thus, the threat of imprisonment is a deterrent factor.

Imposing a maximum term of 3 years of supervised release to include 18 months of community confinement following the requested 24-month custodial term will punish Karpis, and this Court's supervisory power over him will serve as a sufficiently effective deterrent. Supervised release "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special

- 13 -

[supervisory] restrictions." *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972); *see also, Gall*, 552 U.S. at 48-49 (2007).

*Gall* noted that "'[p]robation is not granted out of a spirit of leniency. . . . As the Wickersham Commission said, probation is not merely 'letting an offender off easily,'" 552 U.S. at 49 n.4 (citation omitted) and "'the probation or parole conditions imposed on an individual can have a significant impact on both that person and society . . . . Often these conditions comprehensively regulate significant facets of their day-to-day lives. . . . They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist.'" *Id.* (citation omitted). Supervised release restricts liberty, deters crime, and is amply retributive. "Probation is a substantial restriction of freedom; it is not forgiveness, *and it is not an endorsement of the offense*." *United States v. Myers*, 353 F. Supp. 2d 1026, 1032 (S.D. Iowa 2005) (emphasis added)(citation omitted).[10]

Thus, here, in imposing the least sentence sufficient to deter further crimes of the defendant, the Court should consider the statistically low risk of recidivism posed by Karpis. There is scant risk, if any, that he will reoffend.

---

[10] *See also, Whitehead, supra* at 991 (upholding probation where guidelines range was 41-51months for creating counterfeit access devices where district court had found that defendant was remorseful, was employed, supported his daughter and no longer posed a threat to the community) (emphasis added).

- 14 -

### iii.    To Protect The Public From Further Crimes Of The Defendant

Notwithstanding the instant matter, Karpis was a productive member of the community for the vast majority of his life and, by all indications, will continue down that path well after this matter comes to a close. Imposing a lengthy prison term in this instance would not serve to protect the public.

Under the Guidelines, age (§5H1.1), employment record (§5H1.5) and family ties and responsibilities (§5H1.6) are not "ordinarily relevant" in determining the sentence. But under § 3553(a)(2)(C), they are plainly relevant to the issue of "protecting the public from further crimes of the defendant." *See Booker*, 125 S. Ct. at 765.

Karpis is 35 years old, financially provides for his wife and child and cares for his mother while she battles cancer. All of these factors separately diminish the risk of recidivism. Taken in combination, the risk of recidivism rate is certainly much lower.

### C.    The Money Laundering Guideline Prescribes Sentences Far Greater than Necessary to Achieve the Purposes of Sentencing

In Fiscal Year 2024, only 20.9% of defendants sentenced under the money laundering guideline received a term within-range, with an average downward variance of 48.8% below the recommended range.[11] Likewise, in 2024, only 18% of defendants sentenced under Health Care Fraud received a within-range term, with an average downward variance of 42.8%.[12]

---

[11]  U.S.S.C, *Quick Facts: Money Laundering Offenses,* fiscal year 2024, at p.2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Money_Laundering_FY24.pdf

[12] U.S.S.C, *Quick Facts: Health Care Fraud,* fiscal year 2024, at p.2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Health_Care_Fraud_FY24.pdf

Only one conclusion can be drawn by these facts: This near unanimity suggests that the judiciary sees a consistent disjunction between the sentences prescribed by these guidelines and the fundamental requirement of Section 3553(a) that judges impose sentences "sufficient, but not greater than necessary" to comply with its objectives.

Because the Sentencing Commission fails to rely on empirical data or national experience in promulgating or amending the money laundering guideline, and thus failed to fulfill its institutional role, this Court is free to disagree, on reasoned policy grounds, with its recommendation. *See Spears v. United States*, 129 S. Ct. 840, 843 (2009); *Kimbrough*, 552 U.S. 101-02, 109-10; *Rita*, 551 U.S. at 351, 357. "[T]he Guidelines' calculations for this offense are no longer tied to the mean of what federal judges had previously imposed for such crimes, but instead reflect an even more draconian approach to white collar crime, unsupported by any empirical data." *United States v. Gupta*, 2012 U.S. Dist. LEXIS 154226, at *4 (S.D.N.Y. 2012).

## III.
## CONCLUSION

Based upon the foregoing, Mr. Srapyan respectfully requests the Court impose a varied/split sentence of 24 months of incarceration, followed by three years of supervised release, including a condition of 18 months of community confinement.

Dated:  September 22, 2025                          Respectfully submitted,

                                                   /s/ *David Yerkanyan*
                                                   DAVID YERKANYAN
                                                   Attorney for Defendant
                                                   KARPIS SRAPYAN

- 16 -