George G. Mgdesyan (SBN 225476)
MGDESYAN LAW FIRM
4529 Sherman Oaks Ave.
Sherman Oaks, CA  91403
Telephone: (818) 386-6777
Facsimile: (818) 754-6778
Email: George@Mgdesyanlaw.com

Attorney for Defendant
JUAN CARLOS ESPARZA

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**—WESTERN DIVISION—**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No:  2:24-CR-00348-SVW-2 |
| Plaintiff, | ) <br> ) DEFENDANT JUAN CARLOS |
| vs. | ) ESPARZA'S SENTENCING <br> ) MEMORANDUM; EXHIBITS |
| JUAN CARLOS ESPARZA, | ) <br> ) Sentencing Date:  November 17, 2025 |
| Defendant. | )         Time:  11:00 a.m. <br> ) |
| | ) HONORABLE STEPHEN V. WILSON |

Defendant Juan Carlos Esparza, by and through his attorney of record, George G. Mgdesyan, hereby submits his Sentencing Memorandum.

The attached memorandum is based upon the Presentence Investigation Report, attached exhibits, the Defendant's previously filed Objections to Presentence Investigation Report (dkt. 221), the files and records in this matter, and any other documents or evidence the Court may wish to consider at the sentencing hearing.

For the reasons discussed in detail below, Mr. Esparza respectfully requests the Court impose a sentence of 33 months of incarceration, followed by two years of supervised release.

Dated:  November 2, 2025                    Respectfully submitted,

                                        /s/ *George G. Mgdesyan*
                                        GEORGE G. MGDESYAN
                                        Attorney for Defendant
                                        JUAN CARLOS ESPARZA

,

# TABLE OF CONTENTS

**Page**

SENTENCING MEMORANDUM.................................................................................. 1

I.    INTRODUCTION ....................................................................................... 1

II.    THE SENTENCE MUST BE "SUFFICIENT, BUT NOT GREATER THAN NECESSARY" TO ACHIEVE THE PURPOSES OF SENTENCING UNDER THE STATUTORY DIRECTIVES OF § 3553(a).................................................. 4

    A.    The Nature & Circumstances of The Offense ............................................. 4

    B.    The History and Characteristics of The Defendant .................................... 5

    C.    The Need for The Sentence Imposed To: ..................................................... 8

        i.    Reflect The Seriousness of The Offense, To Promote Respect for The Law, And to Provide Just Punishment for The Offense............. 9

        ii.    Afford Adequate Deterrence to Criminal Conduct......................... 10

        iii.    To Protect the Public from Further Crimes of The Defendant........ 13

    C.    The Money Laundering and Fraud Guidelines Prescribe Sentences Far Greater Than Necessary to Achieve the Purposes of Sentencing .............. 13

III.    CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**U.S. SUPREME COURT CASES**

*United States v. Booker*, 543 U.S. 220 (2005)................................................................passim

*Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586 (2007)..............................................passim

*Kimbrough v. United States*, 128 S. Ct. 558 (2007)................................................................12

*Morrissey v. Brewer,* 408 U.S. 471, 480 (1972)....................................................................10

*Pepper v. United States*, 131 S. Ct 1220 (2011) ....................................................................9

*Rita v. United States*, 127 S.Ct. 2456 (2007) ......................................................................12

*Spears v. United States*, 129 S. Ct. 840 (2009).....................................................................12

**CIRCUIT COURT CASES**

*United States v. Autery*, 555 F.3d 864 (9th Cir. 2009)............................................................10

*United States v. Baker*, 445 F.3d 987 (7th Cir. 2006)..............................................................9

*United States v. Hadash*, 408 F.3d 1080 (8th Cir. 2005) ........................................................4

*United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011).......................................................9

*United States v. Stuart*, 22 F.3d 76 (3d Cir. 1994)..................................................................7

*United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) ................................................9, 11

**DISTRICT COURT CASES**

*United States v. Garcia-Lopez*, 691 F.Supp.2d 1099 (C.D. Cal. 2010) ..................................3

*United States v. Gupta*, 2012 U.S. Dist. LEXIS 154226 (S.D.N.Y. 2012) ...........................13

*United States v. Myers*, 353 F. Supp. 2d 1026 (S.D. Iowa 2005).........................................11

*United States v. Watt*, 707 F. Supp. 2d 149 (D. Mass. 2010).................................................7

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

**STATUTES & CONGRESSIONAL REPORTS**

18 U.S.C. § 1347 ...............................................................................................................1

18 U.S.C. § 1957 ...............................................................................................................1

18 U.S.C. § 3551 ...............................................................................................................9

18 U.S.C. § 3553 ........................................................................................................passim

18 U.S.C. § 3661 ...............................................................................................................4

28 U.S.C. § 994 .................................................................................................................8

Public Law No. 98-473, § 239, 98 Stat. 1987, 2039 (1984)............................................9

**U.S. SENTENCING GUIDELINES**

§ 2A2.2....................................................................................................................8

§ 2A3.2....................................................................................................................8

§ 2B1.1....................................................................................................................1

§ 2B3.1....................................................................................................................8

§ 2S1.1....................................................................................................................1

§ 3B1.2....................................................................................................................2

§ 3E1.1....................................................................................................................1

§ 4C1.1....................................................................................................................2

**U.S. SENTENCING COMMISSION STATISTICS AND SURVEYS**

U.S.S.C, *Quick Facts: Health Care Fraud, fiscal year 2024,* at p.2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Health_Care_Fraud_FY24.pdf ...................................................................12

U.S.S.C, *Quick Facts: Money Laundering Offenses, fiscal year 2024,* at p.2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Money_Laundering_FY24.pdf ...............................................................12

## SENTENCING MEMORANDUM

### I.
### INTRODUCTION

On June 5, 2024, a twenty-three count Indictment was filed against defendant Juan Carlos Esparza and four others in the matter captioned United States v. Petros Fichidzhyan, et al., CR-24-00348-SVW. See Indictment at dkt no. 1.

On June 30, 2025, Mr. Esparza accepted responsibility for his conduct and pleaded guilty, pursuant to a written plea agreement, to Counts Two and Twenty, Health Care Fraud in violation of 18 U.S.C. § 1347 and Money Laundering in violation of 18 U.S.C. § 1957, respectively. See Plea Agreement at dkt. 187.

The parties stipulated to the following Guidelines application:

| | | |
|---|---|---|
| Base Offense Level: | 6 | [§2S1.1(a)(1), §2B1.1(a)(2)] |
| | +16 | [§2B1.1(b)(1)(I)(loss amount over $1.5m)] |
| Specific Offense Characteristics: | +2 | [§2B1.1(b)(7)(Health Care Fraud > $1m)] |
| | +2 | [§2B1.1(b)(11)(C)(means of identification)] |
| | +1 | [§2S1.1(b)(2)(conviction under §1957)] |
| Acceptance | -3 | [§3E1.1(a), (b)] |
| Total Offense Level | = 24 | |

PA at p.21. The parties agreed not to seek, argue or suggest that any other factors apply, except: (1) a two-level reduction for zero-point offender; (2) a two-level enhancement for sophisticated means; and (3) a two-level reduction for minor role. Plea Agreement at p.22.

On September 2, 2025, the United States Probation Office ("USPO") disclosed the PSR, which includes the following Guidelines' assessment:

- 1 -

| | | | |
|---|---|---|---|
| Base Offense Level: | | 6 | [§2S1.1(a)(1), §2B1.1(a)(2)] |
| | | +16 | [§2B1.1(b)(1)(I)(loss amount over $1.5m)] |
| Specific Offense Characteristics: | | +2 | [§2B1.1(b)(7)( Health Care Fraud over $1m)] |
| | | **+2** | **[§2B1.1(b)(10)(C)(sophisticated means)]** |
| | | +2 | [§2B1.1(b)(11)(C)(means of identification)] |
| | | +1 | [§2S1.1(b)(2)(conviction under §1957)] |
| Acceptance | | -3 | [§3E1.1(a), (b)] |
| Adjustments | | **-2** | **[§4C1.1(a)(zero-point offender)]** |
| Total Offense Level | | = 24 | |

PSR, dkt. 209, at ¶¶ 80–107. The USPO also found that defendant was an "average" participant within the offenses and thus did not apply a minor role reduction. PSR ¶98.

Based on an advisory Guideline range of 51 to 63 months, the USPO is recommending a sentence of 51 months' incarceration, followed by 2 years of supervised release. See USPO Recommendation Letter, dated August 27, 2025.

Defendant previously filed his objections to the PSR as to the enhancement for sophisticated means and the failure to apply a two-level decrease for being a minor participant within the overall conspiracy. See Obj. to PSR at dkt no. 221.

As was extensively discussed in the objection brief, the sophisticated means enhancement should not be applied in this instance. "In order to apply the sophisticated means enhancement to an individual defendant's offense level, the Court must find that "the defendant [himself] must have intentionally engaged in or caused the conduct constituting sophisticated means." *United States v. Terabelian*, 105 F.4th 1207, 1219 (9th Cir. 2024) (citing U.S.S.G. §2B1.1 amend. 792). In other words, the Court must find that Mr. Esparza engaged in "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." §2B1.1 appl n.9(B). The PSR fails to attribute any

conduct to Mr. Esparza that may constitute "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *Id*. Indeed, the PSR points to "Sham Hospices and Impersonated Identities," along with "bank accounts for shell entities to conceal the fraudulent proceeds…" PSR at ¶85. However, Mr. Esparza's conduct was almost entirely restricted to answering phones for the hospices, taking messages, and passing them to the masterminds of the scheme. That does not meet the required definition of sophisticated mean in the Guidelines to trigger application of the enhancement.

Furthermore, as was also outlined in the objection brief, the PSR notes Mr. Esparza's involvement "lasted over a couple of years and was not a 'one off' situation." PSR ¶98. There is nothing in the Guidelines or the application notes which exclude a mitigating role reduction based upon a timeline of involvement. In fact, Mr. Esparza's conduct and involvement in this offense meets the five-factor criteria provided for courts to assess whether a defendant occupied a mitigating role. See §3B1.2 appl n.3(C). First, he did not understand the scope and structure of the criminal activity. Second, he was not involved in the planning or organization of the criminal activity. Third, he did not have *any* decision making authority or influence on the exercise of decision-making authority. Fourth, the nature and extent of his participation was limited to answering phone calls and passing along the messages, among other directives given to him. Nor did he have discretion in performing those acts. Lastly, there is no dispute that Mr. Esparza stood to benefit only a few thousand

dollars per month, out of a multi-million-dollar fraud scheme. Therefore, a minor role reduction should be applied.

Thus, defendant submits that the appropriate Guidelines calculations are as follows:

| | | | |
|---|---|---|---|
| Base Offense Level: | | 6 | [§2S1.1(a)(1), §2B1.1(a)(2)] |
| | | +16 | [§2B1.1(b)(1)(I)(loss amount over $1.5m)] |
| Specific Offense Characteristics: | | +2 | [§2B1.1(b)(7)(Health Care Fraud >$1m)] |
| | | +2 | [§2B1.1(b)(11)(C)(means of identification)] |
| | | +1 | [§2S1.1(b)(2)(conviction under §1957)] |
| Adjustments | | **-2** | **[§3B1.2(b)(minor participant)]** |
| Acceptance | | -3 | [§3E1.1(a), (b)] |
| Criminal History Adj. | | -2 | [§4C1.1(a)(zero-point offender)] |
| Total Offense Level | | = 20 | |

At criminal history category I, the resulting advisory sentencing range is 33 to 41 months. This should be "the starting point and initial benchmark" prior to evaluating section 3553(a) factors. *See Gall v. United States*, 552 U.S. 38, 49 (2007).

## II.
### THE SENTENCE MUST BE "SUFFICIENT, BUT NOT GREATER THAN NECESSARY" TO ACHIEVE THE PURPOSES OF SENTENCING UNDER THE STATUTORY DIRECTIVES OF § 3553(a)(2)

In determining whether to grant Mr. Esparza's request for a sentence at the low-end of the Guideline sentencing range of 33 months of incarceration, followed by two years of supervised release, the Court is respectfully asked to base its decision on the totality of the factors present in this case. The mitigating factors in combination strongly suggest that the requested sentence would be "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.[1]

---

[1] *See United States v. Garcia-Lopez*, 691 F. Supp. 2d 1099 (C.D. Cal. 2010) ("These mitigating factors taken together, and not any one factor in isolation, are so significant and

**A.**     **The Nature And Circumstances Of The Offense**

The nature and circumstances of the offense was extensively discussed in defendant's previously-filed objections to the PSR. For the sake of brevity, defendant hereby incorporates by reference the objections brief in its entirety.

Mr. Esparza's conduct caused the least amount of monetary loss in this conspiracy, $1,825,012, which is approximately one-million dollars less than the lowest figure attributable to any other codefendant. One codefendant was sentenced to 144 months, with a loss amount of $17,129,060. Two others were sentenced to 57 months, with loss amounts of $4,689,579 and $3,203,574, respectively. The fourth codefendant has not been sentenced, but the loss amount agreed upon in their plea agreement is $2,822,963. Thus, if loss amount is any indication of culpability, Mr. Esparza is the least culpable among all similarly situated defendants in this matter and the sentence imposed should reflect that circumstance.

**B.**     **The History And Characteristics Of The Defendant**

The following social history of Juan Esparza is provided in the spirit of 18 U.S.C. § 3661, which states "that no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a Court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

---

unaccounted for in the Guidelines that they make a Guidelines sentence completely inappropriate. . . As the Supreme Court has noted, 'a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.'" *Id.* at 1105 (*quoting Gall, supra*).

Juan, age 33, has accepted responsibility for his actions, demonstrated remorse and now comes before this Court for sentencing. Juan is a first-time, non-violent, white-collar offender, who has lived a law-abiding life for the vast majority of his years.[2]

Juan was born and raised in Los Angeles. PSR ¶¶ 120, 127. His father works as a mechanic and his mother works as a waitress and at Home Goods. PSR ¶122. He has two siblings, Jessica and Walter. Id. ¶123. Juan maintains a close relationship with each of his immediate family members.

Multiple character reference letters are attached hereto as Exhibit A. The theme that runs through these letters is of a kind, generous and loving family-man who made a serious mistake in an otherwise law-abiding life. They unanimously described Juan's dependability, honesty, and compassion for others.

Juan's mother, Maria Llerenas, describes him as a "dependable, thoughtful, and always there when you need him." See Letter from Maria Llerenas at Ex. A. His mother further provides a heartfelt, detailed letter about the struggles Juan went through when he was younger during his battle with cancer:

> I can't imagine my life without seeing Juan regularly. He comes over often to check on me, and we share meals together—especially when I cook his favorite dinner. These moments are precious to me. The thought of not having him around fills me with sadness and anxiety. When Juan was a child, he battled cancer. It was one of the hardest times in our lives, but even then, he showed incredible strength. He would try to hide his pain just to make me

---

[2] *See United States v. Hadash*, 408 F.3d 1080, 1084 (8th Cir. 2005) (six level downward departure upheld where district court concluded that defendant was "law abiding citizen, who [did] an incredibly dumb thing" and "was not the type of defendant the guidelines section was designed to punish").

> smile. I remember thinking | might lose him, and it was the worst feeling I've ever experienced. That same fear is creeping back into my heart now, and it's overwhelming. I feel uneasy, stressed, and deeply saddened.
>
> Juan is a good man. He is respectful, caring, and full of love. He's a devoted son, a protective brother, and a cherished uncle. I hope you can see through my words the kind of person he truly is—not just through what he's done, but through the love he's given to everyone around him.

Id.

Juan's aunt, Hermelinda, conveys the warm, loving person Juan is and has always been. The inherent nature of family bond is described in detail in her letter to the Court. Id.

Pedro Santoyo, a family-friend and law-enforecement officer with the LAPD for 10 years, describes Juan as a "kind, respectful, and caring individual who places a high value on family and integrity. He is deeply involved in his family's life and serves as the godfather to Mayra's children." Id.

Gregory Boyle, director of Homeboy Industries, provides details regarding Juan's voluntary work in the community:

> I write to you on behalf of Juan Esparza, who is scheduled to appear before you. I know Juan through my capacity as Founder and Director of Homeboy Industries. We are a non-profit organization that provides hope, job training and support for previously incarcerated and formerly gang-involved men and women, allowing them to redirect their lives and become contributing members of the community..
>
> Mr. Esparza demonstrated a willingness and commitment to change his life. Mr. Esparza walked through our doors seeking ways to redirect his life. Furthermore, Mr. Esparza has made a conscious decision to be a better person and role model to other

individuals that he comes across. He effortlessly and continuously provides guidance and mentorship to those around him, while allowing himself to grow and heal from his past traumas. He has done this so gracefully in his time at Homeboy Industries. Mr. Esparza has proven to be responsible in taking on more responsibility such as volunteering his time while continuing to tend to his growth. His energy, enthusiasm, and diligence have been an asset to Homeboy Industries and the clients as well. We stand by him as he continues to make strives in his life, his program, and his development on a personal and professional level. This dedication has assisted him in moving forward on his journey to be a productive member of society.

It is my sincerest hope that you will consider the above as you review Juan's suitability for his case. I greatly appreciate your attention to this letter.

Ex. A.

Several, additional letters are attached in Exhibit A. Each of these letters describes a good man who made a mistake and deserves a second chance.

**C.      The Need For The Sentence Imposed To —**

**i.      Reflect The Seriousness Of The Offense, To Promote Respect For The Law, And To Provide Just Punishment For The Offense**

Although, as stated above, the loss amount attributable to Mr. Esparza reveals his lower culpability relative to other conspirators, the current loss table fails to account for the extent to which an offender personally profited from the offense. Indeed, each offender is responsible for the total reasonably foreseeable loss attributable to all co-defendants, regardless of how much each offender personally profited from that amount. Accordingly, an offender who saw no profit at all or a nominal amount of profit will be sentenced just as harshly under the loss table as the mastermind who received the greatest share of the profits.

This calculation thus fails to fairly account for relative culpability among offenders and results in disproportionately high sentences for more marginal co-conspirators. *See United States v. Watt*, 707 F. Supp. 2d 149, 155 (D. Mass. 2010)(the loss table can "overstate both the degree of [defendant's] criminality and his need to be corrected")(*quoting United States v. Stuart*, 22 F.3d 76, 82 (3d Cir. 1994)).

Here, Juan personally profited a few thousand dollars a month for his part in this multi-million dollar scheme. Nevertheless, he has accepted responsibility for causing losses of $1.8-million.

Furthermore, in considering the seriousness of the offense, it should be noted that the assessment in the PSR results in a total offense level 24 and the Guidelines advise that a term of imprisonment should be between 51 and 63 months. This advice should be soundly rejected. The Guidelines are advising this Court to punish Juan identical to defendants found guilty at trial for discharging a firearm during an aggravated assault which results in serious bodily injury (see U.S.S.G. §2A2.2(a), (b)(2)(A), (b)(3)(B), TOL 24) and using a firearm during a robbery (see §2B3.1(a), (b)(2)(D), TOL 24). Indeed, it also advises that a more lenient sentence is appropriate for those convicted of raping a minor under the age of sixteen (§2A3.2(a), BOL 18).

Congress directed the Sentencing Commission to "ensure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the "general appropriateness of imposing a term of

imprisonment on a person convicted of a crime of violence that results in serious bodily injury." 28 U.S.C. § 994(j). Congress issued this directive in the belief that "sentencing decisions should be designed to ensure that prison resources are, first and foremost, reserved for those violent and serious criminal offenders who pose the most dangerous threat to society," and that "in cases of nonviolent and non-serious offenders, the interests of society as a whole as well as individual victims of crime can continue to be served through the imposition of alternative sentences, such as restitution and community service." *See* Pub. L. No. 98-473, § 239, 98 Stat. 1987, 2039 (1984) (set forth at 18 U.S.C. § 3551).

Juan is plainly not a "violent and serious offender" who "pose[s] the most dangerous threat to society."[3] He is a white-collar, non-violent offender who clearly veered off the beaten path.[4]

### ii.    Afford Adequate Deterrence to Criminal Conduct

The Supreme Court has recognized that the likelihood a defendant will engage in future criminal conduct is a central factor that district courts must assess when considering an

---

[3] In *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) (*per curiam*), the Ninth Circuit affirmed a probationary sentence despite the guideline range of 41-57 months for creating counterfeit access devices; explaining that the district court had "properly take[n] into account" its "finding that Whitehead's [nonviolent] crime '[di]d not pose the same danger to the community as many other crimes.'" *Id.* at 993.

[4] *See United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B).

- 10 -

appropriate sentence. *Pepper v. United States*, 131 S.Ct. 1229, 1242 (2011), *citing*, 18 U.S.C. §§ 3553(a)(2)(B)-(C); *Gall* at 59. Similarly, the Eleventh Circuit has also evaluated a defendant's risk of recidivism "as a basis for a sentencing departure." *See United States v. Jayyousi*, 657 F.3d 1085, 1117 (11th Cir. 2011).

The low-end sentence of 33 months requested herein, followed by two years of supervised release serves as a deterrent. Beyond the extensive limits on a supervised releasee's freedom, yet another punishment inherent in supervision is the proverbial hangman's noose. At any slip or violation of the release conditions, the noose can be tightened and the offender imprisoned. The Ninth Circuit used this very metaphor when it upheld a probationary sentence rather than imprisonment in a child pornography case. "It is said that there is nothing like being sentenced to hang in the morning to focus a man's thoughts, and it is improbable that the district court's stern warning will be an ineffective deterrent in this case." *United States v. Autery*, 555 F.3d 864, 876 (9th Cir. 2009).

Supervised release, then, is not just a momentary loss of freedoms—it entails an overhanging and continuing threat of greater losses. Trial courts have the inherent power to tighten the noose by extending the supervised period, or exacting harsher conditions, requiring home confinement, or requiring the supervisee to serve prison time. Thus, the threat of imprisonment is a deterrent factor.

Imposing a term of 2 years of supervised release following the requested 33-month custodial term will punish Juan, and this Court's supervisory power over him will serve as a sufficiently effective deterrent. Supervised release "deprives an individual, not of the absolute

- 11 -

liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special [supervisory] restrictions." *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972); *see also, Gall*, 552 U.S. at 48-49 (2007).

 *Gall* noted that "'[p]robation is not granted out of a spirit of leniency. . . . As the Wickersham Commission said, probation is not merely 'letting an offender off easily,'"" 552 U.S. at 49 n.4 (citation omitted) and "'the probation or parole conditions imposed on an individual can have a significant impact on both that person and society . . . . Often these conditions comprehensively regulate significant facets of their day-to-day lives. . . . They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist.'" *Id*. (citation omitted). Supervised release restricts liberty, deters crime, and is amply retributive. "Probation is a substantial restriction of freedom; it is not forgiveness, *and it is not an endorsement of the offense*." *United States v. Myers*, 353 F. Supp. 2d 1026, 1032 (S.D. Iowa 2005) (emphasis added)(citation omitted).[5]

 Thus, here, in imposing the least sentence sufficient to deter further crimes of the defendant, the Court should consider the statistically low risk of recidivism posed by Juan. There is scant risk, if any, that he will reoffend.

---

[5] *See also, Whitehead*, *supra* at 991 (upholding probation where guidelines range was 41-51months for creating counterfeit access devices where district court had found that defendant was remorseful, was employed, supported his daughter and no longer posed a threat to the community) (emphasis added).

### iii.    To Protect The Public From Further Crimes Of The Defendant

Notwithstanding the instant matter, Juan was a productive member of the community for the vast majority of his life and, by all indications, will continue down that path well after this matter comes to an end. Imposing a lengthy prison term in this instance would not serve to protect the public.

## C.    The Money Laundering Guideline Prescribes Sentences Far Greater than Necessary to Achieve the Purposes of Sentencing

In Fiscal Year 2024, only 20.9% of defendants sentenced under the money laundering guideline received a term within-range, with an average downward variance of 48.8% below the recommended range.[6] Likewise, in 2024, only 18% of defendants sentenced under Health Care Fraud received a within-range term, with an average downward variance of 42.8%.[7] Only one conclusion can be drawn by these facts: This near unanimity suggests that the judiciary sees a consistent disjunction between the sentences prescribed by these guidelines and the fundamental requirement of Section 3553(a) that judges impose sentences "sufficient, but not greater than necessary" to comply with its objectives.

Because the Sentencing Commission fails to rely on empirical data or national experience in promulgating or amending the money laundering guideline, and thus failed to fulfill its institutional role, this Court is free to disagree, on reasoned policy grounds, with its

---

[6] U.S.S.C, *Quick Facts: Money Laundering Offenses,* fiscal year 2024, at p.2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Money_Laundering_FY24.pdf

[7] U.S.S.C, *Quick Facts: Health Care Fraud,* fiscal year 2024, at p.2, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Health_Care_Fraud_FY24.pdf

recommendation. *See Spears v. United States*, 129 S. Ct. 840, 843 (2009); *Kimbrough*, 552 U.S. 101-02, 109-10; *Rita*, 551 U.S. at 351, 357. "[T]he Guidelines' calculations for this offense are no longer tied to the mean of what federal judges had previously imposed for such crimes, but instead reflect an even more draconian approach to white collar crime, unsupported by any empirical data." *United States v. Gupta*, 2012 U.S. Dist. LEXIS 154226, at *4 (S.D.N.Y. 2012).

## III.
## CONCLUSION

For the reasons discussed above, Mr. Esparza respectfully requests the Court impose a sentence of 33 months, followed by two years of supervised release.

Dated:  November 2, 2025                    Respectfully submitted,

/s/ *George G. Mgdesyan*
GEORGE G. MGDESYAN
Attorney for Defendant
JUAN CARLOS ESPARZA

- 14 -